[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**May 27, 2005**
**THOMAS  K. KAHN**
**CLERK**

No. 04-14091
Non-Argument Calendar

D. C. Docket No. 04-20174-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE ARTURO GIRALDO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

(May 27, 2005)

**ON PETITION FOR PANEL REHEARING**

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

The panel's opinion in this case issued on March 8, 2005. Pursuant to Appellant's petition for rehearing, which we GRANT as to panel rehearing, we VACATE our prior opinion and issue the following opinion in its place:

Jorge Giraldo appeals his 57-month sentence, imposed after his plea of guilty to importing 100 grams or more of heroin, in violation of 21 U.S.C. §§ 952(a), 960(b)(2). On appeal, Giraldo challenges his sentence on two grounds, both of which he raised in the district court: (1) Giraldo argues the district court erred by denying a minor-role reduction, because he was only a courier, and (2) Giraldo asserts his Fifth and Sixth Amendment rights were violated, because his sentence was based upon a drug quantity that was neither charged in the indictment nor stipulated to by him, in violation of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

We review a district court's factual findings regarding a defendant's role in the offense for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). We review preserved constitutional errors de novo, but "will reverse only for harmful error." United States v. Sanchez, 269 F.3d 1250, 1272 (11th Cir. 2002) (en banc). After the Supreme Court's recent decision in United States v. Booker, __ U.S. __, 125 S. Ct. 738, 765-66 (2005), we review a district court's sentencing scheme for unreasonableness.

After thorough review of the record, as well as careful consideration of the parties' briefs, we find no <u>Booker</u> constitutional error. However, we find <u>Booker</u> non-constitutional error and conclude that because the government has not met its burden to show harmlessness, we vacate and remand Giraldo's sentence for resentencing, pursuant to the discretionary Sentencing Guidelines scheme now required by <u>Booker</u>.

The relevant facts are these. On March 19, 2004, Giraldo was indicted with one count of importing into the United States 100 grams or more of heroin, in violation of 21 U.S.C. §§ 952(a), 960(b)(2) (Count 1); and one count of possessing with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Pursuant to a written plea agreement, Giraldo agreed to plead guilty to Count 1 and the government agreed to dismiss Count 2.[1]

At the subsequent plea colloquy, Giraldo acknowledged that he (1) was charged with importing more than 100 grams of heroin, and (2) faced a statutory sentence of 5 to 40 years' imprisonment. The government then provided the following factual proffer to support the plea. On March 8, 2004, Giraldo arrived at Miami International Airport ("MIA") on a flight from Medellin, Colombia. During a secondary x-ray examination of Giraldo, United States Customs and

---

[1] The plea agreement did not contain a sentence-appeal waiver.

Border Protection inspectors discovered numerous pellets distributed throughout Giraldo's intestinal tract. Thereafter, 99 pellets were recovered from his body. In total, the pellets tested positive for 985 grams of heroin. The district court asked Giraldo whether he believed that the government could prove its factual assertions at trial, to which he responded, "Yes, I think so." He then proceeded to sentencing.

According to the presentence investigation report ("PSI"), Giraldo had signed a written statement, in which he admitted his involvement in the offense and stated that he had been recruited by Ulices Jaramillo to bring drugs into the United States from Colombia. According to his statement, Giraldo was going to be paid $30,000 when the drugs were delivered. The PSI set Giraldo's base offense level at 30, pursuant to U.S.S.G. § 2D1.1(c)(5), based on the probation officer's conclusion that Giraldo was responsible for 985 grams of heroin (again, the amount the government earlier had proffered, and to which Giraldo agreed, at the plea colloquy).

With a total offense level of 25 and a criminal history category I, Giraldo's Guidelines range was 57 to 71 months' imprisonment. Giraldo objected to the probation officer's failure to apply a two-level, minor-role reduction, pursuant to U.S.S.G. § 3B1.2. He also objected that, pursuant to the Supreme Court's decision

in Blakely, he should have been held responsible for only 100 grams of heroin, based on the  amount charged in the indictment.

At the sentencing hearing, Giraldo again argued that he was entitled to a minor-role reduction because he played a limited role in the offense and there was no evidence that he intended personally to distribute the drugs that he had imported.   The government responded that a minor-role reduction was not warranted because (1) Giraldo had been held responsible only for the heroin that he personally imported; (2) he had an "equity interest" in the drugs; and (3) there was a substantial amount of heroin involved in the criminal offense.  After noting its discretion to grant the reduction, the district court overruled Giraldo's objection, stating that it was doing so for the reasons set forth by the government and the PSI.  The court noted: "I do not believe that this is an appropriate case for a minor role adjustment and I will not choose to do that."  The court also overruled Giraldo's Blakely objection, noting that he had acknowledged, during the plea colloquy, that he had imported 985 grams of heroin.

The district court sentenced Giraldo to a 57-month term of imprisonment. Giraldo then renewed his objection to the denial of a minor-role reduction, objecting to the government's characterization of the fee that he was going to be paid as an equity interest.  Giraldo also renewed his Blakely objection, noting that

his "tacit acceptance" of the government's proffer at the plea colloquy did not amount to a stipulation. The district court responded that it found Giraldo's acceptance of the government's proffer as to drug quantity had not been "tacit," but rather was "a direct acceptance of the presentation which was made by the government. That was my interpretation of it." In overruling Giraldo's renewed objection, the court further noted: "If I had held that it was merely a tacit approval I could assure you I would have inquired further, as I have in other cases more recently where there has been some question as to whether they were admitting the facts that were present[ed]." This appeal followed.

First, Giraldo argues the district court erred by denying him a minor-role reduction because he was only a courier, making a one-time delivery of drugs, and the other participants were more culpable. He also asserts that the court erred by finding he had an equity interest in the drugs -- he contends the record establishes only that he would receive a fee for transporting the drugs from Colombia.

The Guidelines provide for a two-level decrease where the defendant was a minor participant in any criminal activity. See U.S.S.G. § 3B1.2(b). A minor participant is defined as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3). To determine whether the adjustment applies, a district court

6

first should measure the defendant's role against the conduct for which he has been held accountable. See De Varon, 175 F.3d at 934. With regard to drug couriers, this Court has indicated that its holding in DeVaron "[did] not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal," but "[r]ather . . . [established] only that the district court must assess all of the facts probative of the defendant's role in [his] relevant conduct in evaluating the defendant's role in the offense." United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002). In drug courier cases, "the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct" and "may be dispositive – in and of itself – in the extreme case." DeVaron, 175 F.3d at 943.

Second, where there is sufficient evidence, a court also may measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant. See id. In making this inquiry, a district court should look to other participants only to the extent that they (1) are identifiable or discernable from the evidence, and (2) were involved in the relevant conduct attributed to the defendant. See id. at 944 (stating that "[t]he conduct of participants in any larger criminal conspiracy is irrelevant"). Moreover, "the amount of drugs imported is a material consideration in assessing a defendant's

7

role in [his] relevant conduct." Id. at 943.

Here, the relevant conduct attributed to Giraldo at sentencing was the importation of 985 grams of heroin, which represents only the amount of drugs found on Giraldo upon his arrival at MIA. Because he was held responsible only for the amount of narcotics he personally smuggled, Giraldo's relevant conduct was sufficient to support the district court's factual finding that he played an essential role in the importation of those drugs.[2] On the second prong, Giraldo failed to show that his conduct in transporting the drugs into the United States rendered him less culpable than the only other participant whom he identified (Jaramillo), and Giraldo unquestionably smuggled a substantial amount of cocaine, which is relevant to the minor-role- reduction calculus. See De Varon, 175 F.3d at 946 (determining that 512.4 grams was a "substantial amount" of

---

[2] We are unpersuaded by Giraldo's argument that, in denying the enhancement, the district court failed to make independent findings and improperly relied upon the government's mistaken assertion that he possessed an "equity interest" in the heroin. The PSI, which was adopted by the district court, contained Giraldo's written acknowledgment that he was to be paid a flat $30,000 fee for transporting the heroin and made no mention of an "equity interest" in the heroin. Any error resulting from the government's single reference to an "equity interest," which Giraldo had the opportunity to object to at the sentencing hearing but did not, clearly was harmless. Cf United States v. Shelton, 400 F.3d 1325 (11th Cir. Feb. 25, 2005) (defendant who did not object to PSI's factual statements about relevant conduct admitted those facts) (citing United States v. Walters, 269 F.3d 1207, 1213 (10th Cir. 2001) ("Walters did not challenge the accuracy of the relevant facts contained in the PSR. Therefore, under the law of this circuit, they are deemed admitted as true." (citation omitted)); United States v. Joshua, 40 F.3d 948, 952 (8th Cir. 1994) ("Joshua did not dispute the PSR's rendition of his criminal history, and the facts therein
therefore stand as admitted." (citation omitted)).

heroin). Accordingly, we can find no clear error in the district court's finding that Giraldo did not play a minor role in the offense.

Giraldo next argues that, under the Supreme Court's holding in Blakely, his Fifth and Sixth Amendment rights were violated because his sentence was based upon a drug quantity that was neither charged in the indictment nor stipulated to by him.[3] In determining whether a defendant has admitted to facts for sentencing purposes, we have held that, "when a defendant pleads guilty and accepts the drug quantity determination contained in the pre-sentence report or agrees to drug quantity at sentencing or in his plea colloquy, he waives any right to appeal his sentence on the basis of Apprendi, regardless of what sentence is ultimately imposed." Sanchez, 269 F.3d at 1271 n. 40. Moreover, a drug-quantity stipulation waives the right to a jury trial on the issue, even if the drug quantity causes a defendant to be sentenced above the statutory maximum for Apprendi. Id. Therefore, "a stipulation to a specific drug quantity -- whether as part of a written plea agreement, part of a jury trial, or at sentencing -- serve[s] as the equivalent of a jury finding on that issue, since the stipulation takes the issue away from the jury." Sanchez, 269 F.3d at 1271 n.40. In surveying our Apprendi

---

[3] After the filing of the briefs in this case, the Supreme Court extended Blakely to the Federal Sentencing Guidelines. See United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005).

9

precedent, we noted that this rule applies not only when the defendant takes the affirmative step of stipulating to a particular fact, <u>but also when the defendant fails to object to or contest the particular finding at issue</u>.  <u>Id.</u> (emphasis added).

Indeed, in the context of a plea agreement, the <u>Blakely</u> Court observed that the government "is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."  <u>Blakely</u>, 542 U.S. at ___, 124 S.Ct. at 2541.  Thus, there is no Sixth Amendment violation when a district court relies on facts to which the defendant agrees.  <u>Id.</u>; <u>see also</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1330 (11th Cir. 2005) (reviewing for plain error and holding that there was no Sixth Amendment violation under <u>Booker</u> because the defendant's sentencing enhancements were based on either prior convictions or facts that were admitted by the defendant).  Put simply, because Giraldo admitted during the plea colloquy to the government's factual proffer regarding the drug quantity, the district court committed no Sixth Amendment violation by sentencing him based on his admission.[4]

---

[4] To the extent Giraldo again asserts that his agreement to the drug-quantity proffer was "tacit" in nature, based on our review of the entire record, including the plea colloquy transcript, we remain unpersuaded.  At the colloquy, the district court expressly asked Giraldo about the government's drug-quantity proffer, and Giraldo responded that he agreed to the amount.  The district court further discussed the plea agreement, the elements of the offense, the burden of proof, and the consequences of pleading guilty with Giraldo in detail.  Giraldo responded that he was not coerced into pleading guilty, that he understood the charges and consequences of pleading guilty, and that he pleaded guilty. The record shows that Giraldo understood the charges against him, his

10

Despite that there was no impermissible judicial factfinding here, we find there was <u>Booker</u> error, within the meaning of the remedial holding of the case, because the court treated the Guidelines range as mandatory and "the Supreme Court has now excised the mandatory nature of the Guidelines in <u>Booker</u>." <u>Shelton</u>, 400 F.3d at 1330 (reviewing <u>Booker</u> claim for plain error). In <u>Shelton</u>, we concluded that "it was <u>Booker</u> error for the district court to sentence Shelton under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." <u>Id.</u> (citation omitted). Based on the excision of the mandatory provisions of the Guidelines, in cases involving preserved <u>Booker</u> error, we have required the Government to show that the mandatory, as opposed to the advisory, application of the Guidelines did not contribute to the defendant's sentence. <u>See</u> <u>United States v. Paz</u>, 405 F.3d 946, 948-49 (11th Cir. 2005) (holding that the Government could not meet its burden under harmless error analysis because the record indicated that district court would have imposed

_____

options, and the government's proffer, and that he voluntarily and knowingly pleaded guilty. Giraldo has pointed to <u>no</u> evidence suggesting an amount other than the 985 grams attributed to him. In cases involving alleged constitutional errors, this Court must affirm "if the record does not contain evidence that could rationally lead to a contrary finding with respect to drug quantity." <u>United States v. Nealy</u>, 232 F.3d 825, 830 (11th Cir 2000) (citation omitted). Here, Giraldo signed a written statement, admitting his involvement in the offense, and the drug quantity was based on actual heroin retrieved from Giraldo by law enforcement officers. In light of this evidence, there is no evidence from which a reasonable jury could have found a contrary drug quantity.

shorter sentencing under advisory Guidelines scheme). The government bears the burden to show that the <u>Booker</u> non-constitutional error did not affect substantial rights. <u>See</u> Fed. R. Crim. P. 52(a); <u>United States v. Gallegos-Aguero</u>, --- F.3d ----, 2005 WL 1160635, *2 (11th Cir. May 18, 2005)("Non-constitutional error is harmless when it does not affect the substantial rights of the parties. . . . The burden is on the government to show that the error did not affect the defendant's substantial rights." (citations omitted)).[5]

Based on our careful reading of the record, and particularly the transcript of the sentencing hearing, we conclude that the government has not met its burden of establishing that the error was harmless. <u>Cf.</u> <u>Paz</u>, 405 F.3d at 948-49 (holding government failed to meet it burden to show harmlessness of mandatory application of the Guidelines where transcript of sentencing hearing indicated district court would have imposed shorter sentence under advisory sentencing

---

[5] A non-constitutional error is harmless "if, viewing the proceedings in their entirety, a court determines that the error did not affect the [outcome], or had but very slight effect." <u>United States v. Hornaday</u>, 392 F.3d 1306, 1315 (11th Cir. 2004) (internal quotation marks and citations omitted). "If one can say 'with fair assurance . . . that the judgment was not substantially swayed by the error,' the judgment is due to be affirmed even though there was error." <u>Id.</u> (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 764 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946)); <u>see</u> <u>also</u> <u>United States v. Frazier</u>, 387 F.3d 1244, 1266 n.20 (11th Cir. 2004) (<u>en</u> <u>banc</u>) ("Errors do affect a substantial right of a party if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." (quoting <u>Kotteakos</u>, 328 U.S. at 764-65, 66 S. Ct. at 1248)).

scheme).  Accordingly, we vacate Giraldo's sentence and remand for resentencing consistent with Booker.[6]

**VACATED AND REMANDED.**

---

[6] We note that in this case, the district court correctly determined the Guidelines range for Giraldo's conviction.  On remand, pursuant to Booker, the district court is required to sentence Giraldo under an advisory Guidelines scheme, and, in so doing, must consider the Guidelines range and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." Booker, 125 S. Ct. at 757.