[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2005
THOMAS K. KAHN
CLERK

No. 04-14683
Non-Argument Calendar

_____

D.C. Docket No. 03-20764-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWELLEY CAULEY,
a.k.a. Bart,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 2, 2005)

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Dwelley Cauley appeals his 210-month sentence, imposed after he pled guilty

to conspiracy to possess with intent to distribute five kilograms or more of cocaine,

in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). On appeal, Cauley argues that, in light of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), which was extended to the federal Sentencing Guidelines in United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the district court violated his Sixth Amendment rights at sentencing when it held him accountable for 614 kilograms of cocaine. He also argues that the district court violated the remedial holding of Booker by applying the Guidelines as mandatory, and that the error's harmfulness is evidenced by the district court's imposition of "the mandatory-minimum guideline sentence." Cauley raised these objections in the district court and therefore is entitled to de novo review. United States v. Paz, --- F.3d ---, 2005 WL 757876, *2 (11th Cir. Apr. 5, 2005). We will reverse a Booker error only if the error was harmful, meaning that the error affected substantial rights. Id.

After thorough review of the record, as well as careful consideration of the parties' briefs, we find no constitutional sentencing error. However, we find non-constitutional Booker error and, accordingly, vacate and remand Cauley's sentence for resentencing, pursuant to the discretionary Sentencing Guidelines scheme now required by Booker.

The relevant facts are these. Cauley pled guilty, without a written plea agreement, to conspiracy to possess with intent to distribute five kilograms or more

of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). At the plea colloquy, the district court advised Cauley that, among other things, he had a right to a jury trial and to have the government prove its case beyond a reasonable doubt. Cauley indicated that he understood that by pleading guilty, he was giving up these rights. The district court then instructed Cauley to pay attention to the government's recitation of the facts it would have proven had Cauley gone to trial because the court would later ask him if he agreed with the facts. The government then indicated that it would have proven, among other things, that Cauley "possessed with intent to distribute . . . a total of 614 kilograms of cocaine during the course of the conspiracy." The court asked Cauley if he agreed to the facts recited by the government, to which Cauley responded affirmatively. The court thereafter accepted Cauley's guilty plea and he proceeded to sentencing.

According to the presentence investigation report (PSI), Cauley, codefendant David Marks, unindicted co-conspirator Eddie Diaz, and three other named unindicted co-conspirators, as well as other unknown, unindicted co-conspirators, engaged in the conspiracy from January 1995 until January 1999. During 1995, Diaz, a cocaine supplier, distributed at least 100 kilograms of cocaine to Cauley and Marks, and from 1995 until 1997 Diaz distributed cocaine to Cauley and Marks on a regular basis, making approximately 20 deliveries of 10-20 kilograms of cocaine each.

3

During a search of one of Diaz's "stash houses," investigators found a drug ledger that showed that Cauley received 155 kilograms of cocaine between July 13 and October 30, 1997, and 90 kilograms of cocaine between April 7 and April 14, 1998. During a search of a second stash house, investigators found another ledger indicating that Cauley and Marks received 69 kilograms of cocaine on or about October 27, 1998. In total, Cauley and Marks were responsible for 614 kilograms of cocaine.

The probation officer assigned Cauley a base offense level of 38 based on an offense involving 150 kilograms or more of cocaine. Cauley's offense level was decreased three levels for acceptance of responsibility. With a total offense level of 35 and criminal history category of III, the applicable guideline range was 210 to 262 months.

Prior to sentencing, Cauley objected, based on Blakely, to the use of 614 kilograms of cocaine to determine his base offense level. Cauley asserted that during his plea colloquy, the district court had failed to inform him that drug quantity was an element of his offense and that he had the right to have a jury determine the drug quantity. He argued that the district court could not "sentence him for any amount other [than] the '5 kilograms or more' of cocaine" charged in the indictment. Cauley also argued that his Sixth Amendment right to a jury trial would be violated because there was no knowing and intelligent waiver of the right since the court did not advise

4

him of his right to a jury trial or to a jury finding beyond a reasonable doubt on the amount of cocaine during his plea colloquy. He contended that his acquiescence to the amount of cocaine at the plea colloquy was not the same as a stipulation because, the term "stipulate" required a <u>written</u> plea agreement, which was not present in this case.

At the sentencing hearing, the district court denied Cauley's objection, finding that <u>Blakely</u> was not implicated since Cauley had agreed to the amount of cocaine proffered by the government during the plea colloquy. In considering Cauley's motion to allow his sentence to run concurrently with a sentence imposed in a different case, the district court accepted the government's suggestion to allow the sentence in the instant case to run partially concurrent with the other sentence. The court stated that the government's suggestion was "eminently reasonable under the circumstances."

Adopting the PSI, the court sentenced Cauley to 210 months' imprisonment to run partially concurrent with his other sentence, such that Cauley would serve an additional five years of imprisonment beyond the sentence imposed in the other case. The court indicated that the 210-month sentence was "sufficient under all of the circumstances to deter future criminal conduct." This appeal followed.

In Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S. Ct. at 2362-63. The Court subsequently applied the Apprendi rule in the context of Washington State's sentencing guideline scheme, clarifying that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at ___, 124 S. Ct. at 2537 (citations omitted) (emphasis in original).

Most recently, in Booker, the Supreme Court found "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. See 125 S. Ct. at 749. The Court held that the mandatory nature of the Guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at 749-52. "This constitutional holding 'means that it is no longer possible to maintain the judicial factfinding that Congress thought would underpin the mandatory Guidelines system

6

that it sought to create.'" United States v. Garcia, --- F.3d ---, 2005 WL 845532, at *12 (11th Cir. Apr. 13, 2005) (quoting Booker, 125 S. Ct. at 757).

Here, Cauley was held responsible only for the quantity of cocaine the government proffered, without objection, as a basis for Cauley's guilty plea at the plea colloquy. Again, the district court advised Cauley that he should "pay attention" to the factual proffer and that he would later be asked whether he agreed to the facts as stated by the government. The government stated that it would have proven that Cauley "possessed with intent to distribute . . . a total of 614 kilograms of cocaine during the course of the conspiracy." Cauley agreed to these facts at the plea colloquy. On this record, there is no impermissible judicial factfinding in violation of the Sixth Amendment in the district court's attribution of 614 kilograms of cocaine to Cauley for purposes of calculating his offense level.[1]

Although there was no Sixth Amendment Booker violation, Cauley was sentenced under the pre-Booker mandatory Sentencing Guidelines. The district court followed the correct sentencing procedure when it sentenced Cauley, but "the Supreme Court has now excised the mandatory nature of the Guidelines in Booker."

---

[1] This fact distinguishes the case from our recent decision in United States v. Paz, __ F.3d__, 2005 WL 757876 (11th Cir. Apr. 5, 2005), which involved a six-level enhancement to the defendant's offense level based on judicial factfinding as to amount of loss. Thus, Paz involved both constitutional and non-constitutional Booker error.

United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (reviewing Booker claim for plain error). In Shelton, we concluded that "it was [non-constitutional] Booker error for the district court to sentence Shelton under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." Id. at 1330-31 (citing United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005) ("the [non-constitutional Booker] error is the mandatory nature of the guidelines once the guidelines range has been determined")). "As a result of Booker's remedial holding, Booker error exists when the district court misapplies the Guidelines by considering them as binding as opposed to advisory." Shelton, 400 F.3d at 1331.

After adopting the PSI and its recommended Guidelines range, the district court treated the resulting range as mandatory. Had the district court treated the Sentencing Guidelines as advisory, it might have found Cauley responsible for the same amount of cocaine but nevertheless sentenced him below the Guidelines range for this quantity based upon other factors, such as the various grounds upon which Cauley presented testimony from four character witnesses at the sentencing hearing. Because the district court treated the Sentencing Guidelines as mandatory, and provided no indication that it would have imposed a different sentence under a discretionary

8

scheme, it is impossible to tell what sentence it would have imposed under an advisory reading of the Sentencing Guidelines.

Based on the excision of the mandatory provisions of the Guidelines, in cases involving preserved Booker error, we have required the Government to show that the mandatory, as opposed to the advisory, application of the Guidelines did not contribute to the defendant's sentence. See Paz, 2005 WL 757876 at *2 (holding that the Government could not meet its burden under harmless error analysis because the record indicated that had the Guidelines been advisory, his sentence would have been shorter). Thus, the government bears the burden to show that the non-constitutional Booker error did not affect substantial rights. See Fed. R. Crim. P. 52(a).

A non-constitutional error is harmless "if, viewing the proceedings in their entirety, a court determines that the error did not affect the [outcome], or had but very slight effect." United States v. Hornaday, 392 F.3d 1306, 1315 (11th Cir. 2004) (internal quotation marks and citations omitted). "If one can say 'with fair assurance . . . that the judgment was not substantially swayed by the error,' the judgment is due to be affirmed even though there was error." Id. (quoting Kotteakos v. United States, 328 U.S. 750, 764 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946)); see also United States v. Frazier, 387 F.3d 1244, 1266 n.20 (11th Cir. 2004) (en banc) ("Errors do affect a substantial right of a party if they have a 'substantial influence' on the

outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." (quoting Kotteakos, 328 U.S. at 764-65, 66 S. Ct. at 1248)).

Based on our careful reading of the record, and particularly the transcript of the sentencing hearing, we can find no indication of whether or not the district court would have sentenced Cauley similarly under an advisory scheme. Cf. Rodriguez, 398 F.3d 1at 1301 (applying plain error analysis to an non-preserved Booker error, and stating that because the defendant bore the burden of persuasion and no one could know what would have happened in an advisory system, the defendant could not meet his burden). Accordingly, the government has not met its burden to show harmlessness, or no effect on substantial rights, under Rule 52(a). Accordingly, we vacate Cauley's sentence and remand for resentencing consistent with Booker.[2]

**VACATED AND REMANDED.**

_____

[2] We note that in this case, the district court correctly determined the Guidelines range for Cauley's conviction as 210-262 months' imprisonment. On remand, pursuant to Booker, the district court is required to sentence Cauley under an advisory Guidelines scheme, and, in so doing, must consider the Guidelines range of 210-262 months' imprisonment, and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." Booker, 125 S. Ct. at 757.