[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13124
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-20263-CR-JAG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAUDE PAULIN,
a.k.a. Maude Theodore,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 27, 2009)

Before DUBINA, CARNES and KRAVITCH, Circuit Judges:

PER CURIAM:

Maude Paulin appeals her convictions for conspiracy to violate the

Thirteenth Amendment by forcing a person into involuntary servitude, in violation of 18 U.S.C. § 241 (Count 1); obtaining forced labor, in violation of 18 U.S.C. § 1589 (Count 2); and harboring an alien for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) (Count 3). She makes three contentions. First, she contends that her conviction on Count 2 violated the Ex Post Facto Clause of the Constitution. Second, she contends that Count 1 was constructively amended at trial, in violation of the Fifth Amendment. Third, she contends that the district court erred in its jury instruction regarding Count 3.

I.

Paulin first contends that her conviction under the Trafficking Victims Protection Act of 2000 (TVPA), 18 U.S.C. § 1589, violates the Ex Post Facto Clause because the government relied on conduct that pre-dated the effective date of the statute. Because Paulin raises this issue for the first time on appeal, we review it only for plain error. See United States v. Shelton, 400 F.3d 1325, 1328–29 (11th Cir. 2005). The introduction of conduct that predates the effective date of a statute does not constitute plain error where "there is no doubt that the jury would have decided the case the same way" if the evidence had been limited to post-enactment evidence. United States v. Cortez, 757 F.2d 1204, 1207 (11th Cir. 1982).

2

The Ex Post Facto Clause prohibits statutes that "punish as a crime an act previously committed which was innocent when done." United States v. De La Mata, 266 F.3d 1275, 1286 (11th Cir. 2001). The TVPA, which makes it a crime to obtain labor or services through physical or psychological coercion, was enacted on October 28, 2000. See 18, U.S.C. 1589(a). Paulin argues that the government presented a significant amount of evidence at trial that predated the TVPA or reflected no time frame whatsoever. She further argues that the government failed to distinguish pre-October 28, 2000 conduct from conduct that could support a conviction under the TVPA. Therefore, she concludes that her conviction for Count 2 must be reversed because there is a possibility that it was based exclusively on her pre-October 28, 2000.

We disagree. The government introduced a wealth of evidence detailing Paulin's deplorable treatment of Simone Celestin, a girl who Paulin had brought to the United States from Haiti when Celestin was fourteen years old in 1999. From 1999 to 2005, Celestin was forced to do Paulin's bidding. Although Paulin had a guest room at her house, she made Celestin sleep on a mattress on the living room floor. Celestin was required to wake up at 5 a.m. to begin her chores, which included cooking the family's meals and spending the day cleaning the house on her hands and knees. She was not allowed to sit with Paulin's family to eat the

3

meals that she prepared. Instead, she had to wait until after they had finished and then go out to the back porch to eat whatever was left over. She was also forced to bathe outside, using a bucket of cold water. When Celestin objected to her treatment or otherwise "got fresh" with Paulin, Paulin beat her or threatened to send her back to Haiti. Paulin did not enroll Celestin in school. Celestin was not even allowed to leave the house unaccompanied or to make friends. Testimony from several witnesses painted this deplorable picture of Celestin's life, which she endured for six years. Finally, in 2005 Celestin was rescued from Paulin's control and taken to the Florida Immigrant Advocacy Center, which arranged for her to live in a shelter.

Even assuming that the government introduced evidence of Paulin's conduct that predated the TVPA, the evidence clearly established that Paulin's abuse of Celestin continued until 2005,over three years after the effective date of the TVPA. Moreover, the indictment specified that Paulin was charged only for her conduct after the effective date of the TVPA, and the jury had the indictment during their deliberations. We have "no doubt that the jury would have decided the case the same way" if the evidence had been limited to Celestin's conduct after October 28, 2000—the effective date of the TVPA. Cortez, 757 F.2d at 1207.

4

II.

Paulin next contends that her indictment on Count 1, for violation 18 U.S.C. § 241, was constructively amended to charge a conspiracy to violate the TVPA, 18 U.S.C. § 1589(a). Count 1 of the indictment charged Paulin with violating § 241 by conspiring to:

> injure, oppress, threaten, and intimidate [Celestin] in the free exercise and enjoyment of the right secured to her by the Constitution and the laws of the United States, that is, the right to be free from slavery and involuntary servitude, pursuant to the Thirteenth Amendment to the Constitution.

A conviction under § 241 for conspiring to violate the Thirteenth Amendment requires proof of physical or legal coercion, see United States v. Kozminski, 487 U.S. 931, 944, 108 S. Ct. 2751, 2760 (1988), while a conviction for violating § 1589(a) may be premised on psychological coercion. See 18 U.S.C. § 1589(a).

Constructively amending the grand jury's indictment is reversible error per se. United States v. Behety, 32 F.3d 503, 508 (11th Cir. 1994). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." United States v. Peel, 837 F.2d 975, 979 (11th Cir. 1988). Paulin argues that the government constructively amended the indictment by attempting throughout the trial to collapse the distinction between conspiracy

5

relating to the Thirteenth Amendment and conspiracy to violate the TVPA, which was not charged in the indictment.

Again, we disagree. The prosecution's statements must be "viewed in context" to determine whether they amounted to a constructive amendment of the indictment. Behety, 32 F.3d at 508–09. This case involved an indictment for two charges with overlapping elements, so the government's case was necessarily blended together somewhat. As Paulin concedes, however, the district court's jury instruction distinguished the elements required for each count and noted where those elements overlapped. In particular, the district court specifically instructed the jury that proof of physical or legal coercion was required for a violation of § 241, but was not required for a violation of § 1589(a). "Viewed in context," the government did not constructively amend the indictment against Paulin at trial. Id.

## III.

Finally, Paulin contends that the district court erred in refusing her requested jury instruction on Count 3 (harboring an alien for private financial gain, in violation of 8 U.S.C. § 1324). We review the district court's refusal to give a requested jury instruction only for an abuse of discretion. United States v. Morris, 20 F.3d 1111, 1114 (11th Cir. 1994). "In considering the failure of a district court to give a requested instruction, the omission is error only if the requested

6

instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." Wood v. President and Trs. of Spring Hill Coll., 978 F.2d 1214, 1222 (11th Cir.1992).

Paulin argues that the district court abused its discretion by not instructing the jury, as she requested, that a conviction on Count 3 required the absence of any motive for charity or affection. That argument fails because the absence of a motive for charity or affection is not an element of the crime. Instead, § 1324 requires proof that the defendant brought Celestin to the United States "for the purpose of commercial advantage or private financial gain." 8 U.S.C. 1324(a)(1). Paulin was allowed to present a defense to that charge by arguing that she brought Celestin to the United States so that she could have a better life and not for private financial gain. The district court's jury instruction was an accurate statement of the law and did not "seriously impair[]" her ability to present her defense. Wood, 978 F.2d at 1222. The district court did not abuse its discretion in refusing to give Paulin's requested instruction.

**AFFIRMED.**