[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 01, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12821
Non-Argument Calendar

_____

D.C. Docket No. 03-00076-CR-FTM-29SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FLOYD WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(July 1, 2005)**

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Floyd Williams appeals his convictions and 360-month sentences for

conspiracy to possess with intent to distribute 50 grams or more of crack cocaine,

in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), and 846; and possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii). On appeal, Williams contends that the district court erred in (1) denying his motion to suppress the crack cocaine found in his apartment because Rebecca Lamar did not have the authority to consent to a search of the apartment, and (2) enhancing his sentences based on facts not admitted by him nor found by a jury beyond a reasonable doubt, and sentencing him based on a mandatory guidelines system in violation of *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005).

## I. BACKGROUND

This case arises from the following facts. On June 13, 2002, the Fort Myers Police Department received a call informing them that Williams had been involved in an aggravated assault with a firearm. Law enforcement officers arrived at Williams's residence and found Williams at home. While attempting to get Williams to surrender himself, Williams's mother and another woman, who identified herself as Eugenia Shackleford, the lessee or renter of the apartment, arrived at the scene. The officers conducted a search after obtaining the written

2

consent of the woman identifying herself as Shackleford, who was later identified as Rebecca Lamar. During the search the officers discovered crack cocaine.

The government's testimony revealed that the agents knew that Williams was in the apartment, Williams's mother showed up at the apartment with a woman, the woman identified herself as the occupant of the apartment, the woman signed the consent to search form in full view of Williams and his mother, and Williams acquiesced to the woman's signing the consent form and never objected to the consent at the scene. The district court held that these facts led the officers to reasonably believe that the woman who consented to the search had the authority to consent and denied Williams's motion to suppress.

A jury adjudged Williams guilty on both counts. At the sentencing hearing, Williams and the government stipulated that Williams was a manager or supervisor, as set forth in U.S.S.G. § 3B1.1(b). In exchange for this stipulation, Williams waived all of his factual and as-applied objections. The court accepted the stipulation, and noted that Williams's new guideline range was 360 months to life. Though Williams was convicted of conspiracy to possess with intent to distribute 50 grams or more, and possession with intent to distribute 50 grams or more, at sentencing the district court held him accountable for 1.5 kilograms or more of cocaine base.

Additionally, Williams's attorney noted for the court that the waiver of objections meant that Williams was precluded from appealing any issues related to his sentencing. After questioning Williams on the voluntariness of his appeal waiver, the court accepted it, sentencing Williams to two 360-month terms of imprisonment, to run concurrently.

## II. DISCUSSION

### A. Motion to Suppress

On appeal, Williams asserts that the district court erred in denying his motion to suppress because the officers did not ascertain the true identity or proprietary interest of Lamar. He argues that the officers violated the Fourth Amendment by acting on her unconfirmed claims that (1) she was Eugenia Shackleford, (2) she resided at the apartment, and (3) she had the legal authority to consent to a search of his apartment.

We review the district court's factual findings for clear error, and review *de novo* the application of those facts to the law. *United States v. Brazel*, 102 F.3d 1120, 1146 (11th Cir. 1997) (citations omitted).

The Supreme Court has stated that a warrantless entry and search by law enforcement officers does not violate the Fourth Amendment if the officers obtained the consent of a third party who possessed common authority over the

4

premises. *See United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974). Further, law enforcement officers do not violate the Constitution when they enter a residence because they reasonably, but erroneously, believe that the person who consented to their entry and the search was a resident of the premises and had the authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S. Ct. 2793, 2800 (1990).

The district court did not err in denying Williams's motion to suppress because the officers' reliance on Lamar's consent to search was reasonable based on the circumstances. First, Lamar stated that her name was Shackleford and she lived at the residence. Williams's mother confirmed to the officers that Lamar lived at the residence. Furthermore, neither Williams, who was in hearing distance of Lamar, nor Williams's mother objected when Lamar claimed to be Shackleford and said that she lived in the apartment. In addition, Lamar signed the consent to search sheet as Shackleford. Finally, Williams instructed Lamar to let the officers search the apartment. These findings are not in error, nor is the conclusion that the officers reasonably relied on Lamar's representation and consent, and had no reason to believe she was lying or that they needed to verify her identity. *See Illinois*, 497 U.S. at 179, 186, 110 S. Ct. at 2796, 2800. Accordingly, the district court did not err when in denying Williams's motion to suppress.

**B.**  *Blakely/Booker*

Williams next contends that the district court erred, under *Blakely*, and by extension, *Booker*, because the exact amount of crack cocaine for which Williams was responsible was not admitted by him nor found by a jury beyond a reasonable doubt.  Williams also argues that his enhancement for being an organizer or manager under § 3B1.1(b) was based on facts neither found by a jury nor admitted by him.  Finally, Williams claims that the federal Sentencing Guidelines are unconstitutional.

Williams raises these issues for the first time on appeal.  When a defendant does not raise objections in the district court, we review the district court's decision for plain error.  *United States v. Shelton*, 400 F.3d 1325, 1328 (11th Cir. 2005), *see also* Fed. R. Crim. P. 52(b).  We may not correct an error under this standard unless (1) there is an error; (2) that is plain, and (3) that affects substantial rights.  *See Shelton*, 400 F.3d at 1328-29.  Once the appellant proves these three elements, we may notice the forfeited error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* at 1329.

Based on the Supreme Court's holding, we have explained that there are two types of *Booker* error: (1) a Sixth Amendment error – the error of imposing a sentencing enhancement based on judicial findings that go beyond the facts

6

admitted by the defendant or found by the jury, and (2) a statutory error – the error of being sentenced under a mandatory guidelines system. *United States v. Shelton*, 400 F.3d 1325, 1330-31 (11th Cir. 2005). If we find that there is error, either constitutional or statutory, that error is plain when it is contrary to the law at the time of the appeal. *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005), *petition for cert. filed*, 73 U.S.L.W. 3531 (Feb. 23, 2005) (No. 04-1148); *Shelton*, 400 F.3d at 1331. With respect to a Sixth Amendment claim, the defendant bears the burden of demonstrating that the error "affected the outcome of the district court proceedings." *Rodriguez*, 398 F.3d at 1299. To prevail on a claim of statutory *Booker* error, the defendant must demonstrate that there was a "reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." *Shelton*, 400 F.3d at 1332 (quotation and citation omitted).

1.    Sixth Amendment Error

In the case before us, we find no constitutional *Booker* error because, at sentencing, Williams waived all of his objections to the Pre-Sentence Investigation Report ("PSI"). Therefore, he admitted the amount of drugs that were attributed to him. *Id.* at 1330 (holding that the defendant failed to meet the first prong of the plain error standard because he waived his objections to the factual statements in

the PSI thereby admitting the facts in that report). Furthermore, at sentencing the government and Williams stipulated that he was a manager within the meaning of the Guidelines. Because Williams admitted his role, the district court did not err by imposing the enhancement based on that role. *Id.* Thus, the district court did not commit Sixth Amendment *Booker* error.

2.    Statutory Error

Under our recent caselaw, Williams can establish statutory *Booker* error because Williams was sentenced using a mandatory guidelines system. *Id.* at 1330-31. Furthermore, *Booker* made this error plain. *Id.* Despite this plain error, Williams cannot prevail because he cannot demonstrate that his substantial rights were affected by the error. In contrast with *Shelton*, in which the district court expressed on the record its view that the sentence was too severe, Williams has not met his burden by showing that the district court would have sentenced Williams differently under an advisory system. Indeed, the court noted Williams's extensive criminal history in stating: "I do think, Mr. Williams, that you have probably set the record in terms of what I've seen in terms of criminal history points." Because Williams cannot show a reasonable probability of a different result, we find no statutory *Booker* error.

## III. CONCLUSION

Upon review of the record and the parties' briefs, we discern no reversible error.  Accordingly, we affirm.

**AFFIRMED.**