[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 25, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12602
Non-Argument Calendar

_____

D. C. Docket No. 03-80098-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRANCE SHELTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 25, 2005)

Before CARNES, HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

Terrance Shelton appeals his 190-month sentence, imposed after he pled

guilty to drug and firearms offenses.

In his initial brief on appeal, Shelton timely raised the numerous issues we address in this case based on Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000); Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), and now United States v. Booker, – U.S. –, 125 S. Ct. 738 (2005), which we collectively refer to herein as the "Booker issues."

After review, we conclude there were no Sixth Amendment violations in Shelton's sentence under Booker. However, the district court erred under Booker in sentencing Shelton under a mandatory Guidelines regime, and Shelton has established a reasonable probability that the district court would have imposed a lesser sentence but for the mandatory Guidelines regime. Thus, for the reasons outlined in this opinion, we vacate Shelton's sentence and remand for resentencing under Booker.

## I. BACKGROUND

A.     Shelton's Guilty Plea

On July 17, 2003, Shelton was indicted for: (1) knowingly and intentionally distributing "at least five (5) grams" of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C), and 18 U.S.C. § 2 (counts 1, 2, and 4); (2) knowingly and intentionally distributing crack cocaine, in violation of 21 U.S.C.

2

§§ 841(a)(1), (b)(1)(B), and (b)(1)(C), and 18 U.S.C. § 2 (counts 5 and 6); (3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (counts 3, 7, and 10); (4) knowingly carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (count 9); and (5) knowingly possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).[1]

In a written plea agreement, Shelton pled guilty to the drug charge in count 4 and the firearms charge in count 9. During the plea colloquy under Rule 11, the district court explained that the mandatory minimum for the drug charge in count 4 was 10 years' imprisonment (120 months) and the maximum was life imprisonment. Shelton's three prior drug convictions increased Shelton's statutory, mandatory minimum sentence from five to ten years' imprisonment and his statutory maximum penalty from forty years' to life imprisonment. 21 U.S.C. § 841(b)(1)(B).[2] During the plea colloquy, the district court further explained that as to the firearm charge in count 9, Shelton would face a mandatory minimum sentence of 5 years' imprisonment (60 months) to run consecutively to his drug

---

[1]Shelton's co-defendant, Jermaine Hunter, also was indicted on the above-listed counts, except count 12. Further, Hunter was indicted individually on several counts that we do not discuss here.

[2]The government gave Shelton written notice listing his three prior drug convictions and explaining the increased penalty. See 21 U.S.C. § 851.

sentence for count 4.

Also during the plea colloquy, the government offered facts showing that Shelton and codefendant Hunter sold drugs and two firearms to a confidential informant ("CI") under surveillance on June 23, 2003. According to the government's recitation of the facts, Shelton's drug transaction with the CI on that one day involved 16.7 grams of crack and 15 grams of cocaine powder. During the plea colloquy, Shelton agreed to the government's recitation of the facts. The district court then accepted Shelton's guilty plea as to counts 4 and 9, and the remaining counts in the indictment were dismissed on the government's motion.

**B.     The Presentence Report**

The Presentence Investigation Report ("PSI") reported that Shelton had participated not only in the above drug offense on June 23, 2003, but also in two other drug transactions with the CI on June 18 and 20, 2003, respectively. The PSI also reported that, on June 26, 2003, an additional amount of drugs were found in a car abandoned by Shelton.

According to the PSI, Shelton's total drug quantity for sentencing purposes was 47 grams of crack cocaine and 87.2 grams of cocaine powder, which represented the total amount of drugs in these four events: (1) the offense conduct on June 23, 2003 that involved 16.7 grams of crack and 15 grams of cocaine

4

powder; (2) the drug transaction on June 18, 2003 that involved 17.1 grams of crack transferred to a confidential informant; (3) the drug transaction on June 20, 2003 that involved 13.2 grams of crack transferred to a confidential informant; and (4) the 72.2 grams of cocaine powder recovered from a car abandoned by Shelton on June 26, 2003.

The PSI noted a marijuana equivalency of 957 kilograms for the total quantity of 47 grams of crack and 87.2 grams of cocaine powder. The marijuana equivalency corresponded to a base offense level of 30. See U.S.S.G. § 2D1.1(c)(5) (providing for base offense level of 30 when drug quantity is at least 700 but less than 1,000 kilograms of marijuana). Shelton filed no objection to the factual statements in the PSI that detailed his offense conduct and the above relevant conduct and drug quantities.

Shelton's PSI further recommended a two-level reduction for acceptance of responsibility and a one-level reduction for assistance to the government, resulting in an adjusted offense level of 27. Based on his prior convictions, the PSI noted that Shelton had 13 criminal history points, which corresponded to a criminal history category of VI. According to the PSI, the sentencing range for offense level 27 and criminal history category VI was 130-162 months' imprisonment for count 4, followed by a mandatory term of 60 months' imprisonment for count 9, to

run consecutively with the term for count 4. Shelton did not object to any of the PSI's calculations.

## C. Sentencing Hearing

At the sentencing hearing, Shelton again raised no objections to the factual statements in the PSI. When the district court inquired about the PSI, Shelton's counsel stated that he had reviewed the report with Shelton and that they did not dispute the factual matters. The district court then sentenced him to 130 months' imprisonment for count 4 and 60 months' imprisonment for count 9, to run consecutively.[3]

In sentencing Shelton, the district court expressed dissatisfaction with Shelton's sentence, but indicated the Sentencing Guidelines and the relevant statutes dictated the result. For example, the district court commented that Shelton's sentence was "very, very severe" due to Shelton's criminal history points and the mandatory, consecutive five-year sentence on the § 924(c) firearms count.

The district court noted that "unfortunately" the Guidelines criminal-history calculation takes into account each of the defendant's past charges and does not take into account the fact that the sentences imposed on those charges were short as a result of such factors as the youth of the defendant or amount of drugs involved.

---

[3]The district court also sentenced Shelton to 8 years' supervised release for count 4 and 5 years' supervised release for count 9, to run concurrently.

The district court later expressed its disapproval of the severity of the sentence again, stating that Congress has taken a "very, very hard stance when it comes to guns and drugs." Most significantly for Shelton, the district court indicated that the most lenient sentence it could impose, a sentence at the low end of the Guidelines range, was "more than [was] appropriate in this situation."

## II. STANDARD OF REVIEW

While Shelton's initial brief on appeal timely raised various Booker issues in this case, he did not raise these issues in the district court. Thus, our review is only for plain error. United States v. Rodriguez, – F.3d –, 2005 WL 272952, at *6 (11th Cir. Feb. 4, 2005). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" Id. (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002)). "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Cotton, 535 U.S. at 631, 122 S. Ct. at 1785).

## III. DISCUSSION

As noted above, on appeal, Shelton raises several Booker issues, which we address here.

## A. Sentencing Enhancements

Shelton first argues that the district court erred when it enhanced his sentence based on a judicial fact-finding of drug quantity and based on his prior convictions. We readily dispense with that issue. The Supreme Court consistently has rejected Shelton's argument that a district court errs when it considers prior convictions in sentencing a defendant under the Guidelines. In Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), the Supreme Court "held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir. 2004) (citation omitted). This conclusion was left undisturbed by Apprendi, Blakely, and Booker.

Moreover, in Booker, the Supreme Court reaffirmed its holding in Apprendi. See Booker, 125 S. Ct. at 756 (opinion of Stevens, J.) (reaffirming that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" (emphasis added)). Thus, a district court does not err by relying on prior

convictions to enhance a defendant's sentence.[4]

Nor did the district court err in sentencing Shelton based on a drug quantity greater than the quantity alleged in the indictment. We recognize that count 4 of his indictment, to which Shelton pled guilty, charged only "at least five (5) grams of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine," which corresponds to a base offense level of 26. It is also clear that the district court started with a base offense level of 30 based on its finding that Shelton's offense and relevant conduct together involved a total of 47 grams of crack and 87.2 grams of cocaine powder, which was converted to a marijuana equivalent of 957 kilograms.

Nonetheless, the first prong of the plain-error test is not satisfied in this case because Shelton's sentence was not enhanced as a result of judicial findings as to drug quantity that went beyond the facts admitted by Shelton. Shelton admitted to part of this drug quantity in his plea colloquy and to the rest of this drug quantity at sentencing. Not only did Shelton raise no objections to the PSI's factual

---

[4]Other circuits post-Booker also have recognized that enhancements for prior convictions are for the judge, not the jury, to determine. See, e.g., United States v. Barnett, – F.3d.– , 2005 WL 357015, at *8 (6th Cir. Feb. 16, 2005) ("[T]here is no language in Booker suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to Apprendi allowing district courts to consider the fact and nature of prior convictions, without submitting those issues to the jury."); United States v. Vieth, – F.3d. – , 2005 WL 284724, at *4 (8th Cir. Feb. 8, 2005) ("As to the enhancement for a prior conviction, the Supreme Court has consistently said that the fact of a prior conviction is for the court to determine, not the jury.").

9

statements about his relevant conduct, but Shelton's counsel also stated, "[W]e don't dispute the factual matters" in the PSI. Thus, Shelton has admitted the facts in the PSI. See United States v. Walters, 269 F.3d 1207, 1213 (10th Cir. 2001) ("Walters did not challenge the accuracy of the relevant facts contained in the PSR. Therefore, under the law of this circuit, they are deemed admitted as true." (citation omitted)); United States v. Joshua, 40 F.3d 948, 952 (8th Cir. 1994) ("Joshua did not dispute the PSR's rendition of his criminal history, and the facts therein therefore stand as admitted." (citation omitted)). Because Shelton admitted to the facts that enhanced his sentence, there is no Sixth Amendment violation under Booker in this case. See United States v. Frye, – F.3d – , 2005 WL 315563, at *4 (11th Cir. Feb. 10, 2005).

## B. "Mandatory" Nature of the Guidelines Error

In this case, Shelton was sentenced under the pre-Booker mandatory Sentencing Guidelines. Thus, we must determine whether under Booker there is error in Shelton's sentence because the district court considered and applied the Guidelines as binding.

### 1. Error

In Booker, the Supreme Court excised the two parts of the Sentencing Reform Act that rendered the mandatory Guidelines system unconstitutional: the

part in 18 U.S.C. § 3553(b)(1) making the Guidelines result binding on the sentencing court; and the part in § 3742(e) requiring <u>de novo</u> review of sentences on appeal. <u>Booker</u>, 125 S. Ct. at 764. In doing so, the Supreme Court stated that "[w]ith these two sections excised (and statutory cross-references to the two sections consequently invalidated), the remainder of the Act satisfies the Court's constitutional requirements." <u>Id</u>. The Supreme Court in <u>Booker</u> further instructed that its remedial holding applies to cases on direct review. <u>Id.</u> at 769 ("[W]e must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review.").[5]

Although the district court followed the correct sentencing procedure when it sentenced Shelton, the Supreme Court has now excised the mandatory nature of the Guidelines in <u>Booker</u>. Thus, we conclude that it was <u>Booker</u> error for the district court to sentence Shelton under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation.[6]

---

[5]We emphasize, however, that Shelton timely raised his <u>Booker</u> issues on direct appeal, which distinguishes his case from those in which the defendant defaulted, waived, or abandoned at the appellate stage the <u>Apprendi</u>, <u>Blakely</u>, or <u>Booker</u> issues. <u>See</u> <u>United States v. Levy</u>, 379 F.3d 1241, 1242 (11th Cir. 2004) (declining to consider issue raised for the first time in petition for rehearing), <u>reh'g en banc denied</u>, 391 F.3d 1327 (11th Cir. 2004); <u>United States v. Ardley</u>, 242 F.3d 989, 990 (11th Cir. 2001) (stating that "we apply our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned" (citation omitted)).

[6]We note that this conclusion is consistent with those of at least two other circuits that have considered this issue. <u>See</u> <u>United States v. Barnett</u>, – F.3d –, 2005 WL 357015, at *8 (6th Cir. Feb. 16, 2005) ("[W]e hold that it was plain error for Barnett to be sentenced under a

11

In reaching this conclusion, we note that <u>Booker</u> error, as succinctly stated in

<u>Rodriguez</u>, is as follows:

> The constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is the mandatory nature of the guidelines once the guidelines range has been determined.

<u>Rodriguez</u>, 2005 WL 272952, at *9.  As a result of <u>Booker</u>'s remedial holding,

<u>Booker</u> error exists when the district court misapplies the Guidelines by

considering them as binding as opposed to advisory.

**2.      Plain**

The next issue is whether the error was "plain."  In this case, "[a]lthough the

error was not 'plain' at the time of sentencing, 'where the law at the time of trial

was settled and clearly contrary to the law at the time of appeal – it is enough that

the error be 'plain' at the time of appellate consideration.'"  <u>Rodriguez</u>, 2005 WL

272952, at *7 (quoting <u>Johnson v. United States</u>, 520 U.S. 461, 468, 117 S. Ct.

1544, 549 (1997)).  <u>Booker</u> made plain the district court's error in sentencing

Shelton under a mandatory Guidelines scheme that is now advisory.  <u>See</u> <u>Barnett</u>,

2005 WL 357015, at *8.  Thus, we move on to the third prong of plain error, which

is exceedingly difficult for defendants to overcome.  <u>See, e.g.</u>, <u>Rodriguez</u>, 2005

---

mandatory Guidelines regime that has now become advisory."); <u>United States v. Labastida-Segura</u>, 396 F.3d 1140, 2005 WL 273315, at *2 (10th Cir. Feb. 4, 2005) (concluding it was error to sentence the defendant under a mandatory Guidelines system).

WL 272952, at *6.[7]

### 3. Effect on Shelton's substantial rights

Under the third prong of plain-error review, Shelton is required to demonstrate that the plain error "affects [his] substantial rights." United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) (quotation marks, citation, and brackets omitted). In this third prong, "[i]t is the defendant rather than the [g]overnment who bears the burden of persuasion with respect to prejudice." United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993). "The Supreme Court has instructed us that plain error review should be exercised 'sparingly.'" Rodriguez, 2005 WL 272952, at *6 (citation omitted). Further, "the plain error test is difficult to meet," and in particular, the "burden of showing prejudice to meet the third-prong requirement is anything but easy." Id. at *6-7 (quotation marks and citation omitted).

Further, the defendant's burden with respect to prejudice is to show that the error "actually did make a difference." Rodriguez, 2005 WL 272952, at *8. In

---

[7]We disagree with the Sixth Circuit's view in Barnett, 2005 WL 357015, at *13-15 (Gwin, J., concurring), that § 3742(f)(1), which provides for and requires a remand upon an incorrect application of the Guidelines, would apply in this instance. 18 U.S.C. § 3742(f)(1). Rather, Booker error is subject to both harmless-error and plain-error review and for that reason does not always require a remand, and often will not. Booker, 125 S. Ct. at 769 (cases on direct review should be reviewed using "ordinary prudential doctrines" and applying the "'plain-error' test" and not every appeal will "lead to a new sentencing hearing"). Thus, Shelton is required to establish all four prongs of the plain-error test.

13

other words, in post-Booker sentencing cases, "in applying the third prong, we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. at *9.[8] A reasonable probability of a different result means a probability "sufficient to undermine confidence in the outcome." Id. at *7 (quotation marks and citations omitted).

A defendant sentenced pre-Booker faces difficulty in establishing that a mandatory, as opposed to an advisory, Guidelines scheme actually affected the outcome of the proceedings. To establish the third prong takes something more than showing the district court sentenced within the Guidelines range and felt bound to do so, especially given that the Guidelines range remains an important

_____

[8]We also disagree with the Sixth Circuit's conclusion of presumed prejudice in a similar case. See Barnett, 2005 WL 357015, at *10-12. The Sixth Circuit adopted the presumed-prejudice approach because it found that "it would be exceedingly difficult for a defendant, such as Barnett, to show that his sentence would have been different if the district court had sentenced him under the advisory, rather than the mandatory, Guidelines framework." Id. at *10. As discussed at length in Rodriguez, clear precedent of the Supreme Court and this Court establishes that a defendant has the burden to show actual prejudice in plain-error review. Rodriguez, 2005 WL 272952, at *7-10. While we agree with the Sixth Circuit's observation that it will be difficult for a defendant to establish the third prong in Booker-error cases, that is no reason to dispense with it as that Court has done. See Barnett, 2005 WL 357015, at *18 (Boggs, C.J., dissenting) ("It is well settled that the defendant must show prejudice before a reviewing court may reverse. . . . Indeed, if the Supreme Court believes that we should presume prejudice when it would be difficult for the defendant to establish it, it is hard to explain why the Court has passed up so many opportunities to articulate such a doctrine." (citation omitted)). Besides, some defendants, including Shelton, can satisfy the third prong.

14

factor in sentencing.[9]  But Shelton has carried that heavy burden in the instant case.

Here, the district court during sentencing expressed several times its view that the sentence required by the Guidelines was too severe, and noted that "unfortunately" Shelton's criminal history category under the Guidelines was based on his past charges rather than on the actual nature of the crimes as reflected in the sentences imposed in those cases.  The district court not only sentenced Shelton to the lowest possible sentence it could under the Guidelines, 130 months, but also stated that sentence was "more than appropriate" in this case.  All of these comments taken together convince us that there is a reasonable probability the district court would have imposed a lesser sentence in Shelton's case if it had not felt bound by the Guidelines.[10]  In addition, and importantly too, Shelton has established a reasonable probability that some sentence below the Guidelines range

---

[9]After Booker, the Federal Sentencing Guidelines remain an essential consideration in the imposition of federal sentences, albeit along with the factors in § 3553(a).  A sentencing court under Booker still must consider the Guidelines, and, such consideration necessarily requires the sentencing court to calculate the Guidelines sentencing range in the same manner as before Booker.  Indeed, the factors the Sentencing Commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a).  The change wrought by Booker is the excising of the mandatory nature of the Guidelines.

[10]We emphasize that the district court was, and still is, bound by the statutory minimums. For example, Shelton's sentence can be no less than 120 months' (10 years') imprisonment for the drug charge in count 4.  The district court sentenced Shelton to 130 months' imprisonment, which is 10 months higher than the statutory minimum on count 4.  The firearms sentence is not in issue in this case because it carries a mandatory, five-year minimum, consecutive sentence to follow the drug sentence.

would be permissible and reasonable in light of Booker and the § 3553(a) factors.[11]

Thus, we proceed to the fourth prong.

### 4.    Fairness, integrity or public reputation of judicial proceedings

Finally, under the fourth prong of plain-error review, we consider whether

the "plain error" at sentencing "seriously affect[ed] the fairness, integrity or public

reputation of judicial proceedings." United States v. Simpson, 228 F.3d 1294,

1300-01 (11th Cir. 2000) (quotation marks and citations omitted); United States v.

Chisholm, 73 F.3d 304, 307 (11th Cir. 1996).  A plain error affecting substantial

rights does not, without more, satisfy the plain-error test, for otherwise the fourth

prong and the discretion afforded by the fourth prong would be illusory.  We

conclude that the fourth prong is established here and that an exercise of our

discretion is warranted in this particular case.[12]

---

[11]Although the district court's comments convince us that on remand the district court will sentence below the range indicated by the Guidelines, we do not know exactly what sentence it will impose after consulting the § 3553(a) factors.  Until we find out, we will not attempt to decide whether a particular sentence below the Guidelines range might be reasonable in this case.  If there is an appeal of the actual post-remand sentence which raises that issue, we can decide it then.

[12]We also must mention the plain-error analysis in United States v. Curtis, 380 F.3d 1308 (11th Cir. 2004).  The Curtis case was before the Court on the defendant's motion to file a supplemental brief on appeal.  After briefing and oral argument, Curtis's motion sought to raise, for the first time on appeal, a claim that his sentencing enhancements were unconstitutional under Blakely.  The Curtis Court's published opinion denied the defendant's motion as untimely.
    In a footnote, the Curtis Court made the alternative ruling that even if the Blakely issue had been raised adequately on appeal, we would have been limited to plain-error review and that the Blakely error in any event was not at all plain under the second prong of plain error review. The Curtis Court did not address the third prong at all, but moved on to the fourth prong, stating:

The district court in this case indicated an express desire to impose a sentence lesser than the low end of the Guidelines range of 130 months' imprisonment, and the Supreme Court in <u>Booker</u> plainly indicated that the district court now has the discretion to do so, provided the resulting sentence is reasonable in light of the § 3553(a) factors. Under these circumstances, the defendant Shelton has carried his burden to establish the fourth prong and has shown that the plain error that affected his substantial rights also seriously affected the fairness, integrity or public reputation of the judicial proceedings in his particular case. Accordingly, we vacate Shelton's sentence and remand for resentencing consistent with <u>Booker</u>.

**VACATED AND REMANDED.**

---

With respect to the fourth prong, we discern no miscarriage of justice in the case, nor do we believe this case presents a situation that seriously affects the fairness, integrity or public reputation of judicial proceedings. Accordingly, as an alternative basis for our decision, we conclude that Curtis has failed to demonstrate plain error.

<u>Id.</u> at 1311 n.2.

Shelton's case is distinguishable from <u>Curtis</u> because (1) Shelton has established the third prong of the plain-error test, that his sentence actually would have been different and shorter but for the district court's error, (2) our failure to notice the forfeited error would leave Shelton with a sentence that the district court would not have given, and (3) in any event, the <u>Blakely</u> error in the Sentencing Guidelines context contemplated by the <u>Curtis</u> panel was judicial versus jury fact-finding of sentencing enhancements and is entirely different from the error we now know to exist under <u>Booker</u> as to the Sentencing Guidelines. <u>See</u> <u>Rodriguez</u>, 2005 WL 272952, at *9 ("The constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is the mandatory nature of the guidelines once the guideline range has been determined.")