[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 28, 2005**
**THOMAS  K. KAHN**
**CLERK**

_____

Nos. 04-10651 and 04-10721
Non-Argument Calendar

_____

D. C. Docket Nos. 97-00581-CR-JAL
and 00-00036-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISMAEL F. ARNAIZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 28, 2005)**

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Ismael Arnaiz pleaded guilty to one count each of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), mail fraud, in violation 18 U.S.C. § 1341, criminal contempt, in violation of 18 U.S.C. § 401(3), and failure to appear, in violation of 18 U.S.C. § 3146(a)(1). He was sentenced to 151 months imprisonment. On appeal, Arnaiz challenges both his convictions and his sentence.

In June 1994, Arnaiz was arrested for a parole violation. He was released after he agreed to cooperate with the government in its investigation of a multi-million dollar Medicare fraud scheme, in which he and a co-defendant were the primary perpetrators. Before offering any assistance to the government, Arnaiz, through counsel, entered into a limited-use immunity agreement.

In April 1996, prior to any charges being brought against him, Arnaiz, represented by his attorney, entered into a written plea agreement, in which he agreed to plead guilty to a later indictment that would charge him with one count of mail fraud and one count of money laundering. Arnaiz also agreed to cooperate fully with the government by appearing at grand jury proceedings, hearings, and trials.

After Arnaiz testified before a grand jury in accordance with his plea agreement, an indictment was returned in July 1997 charging Arnaiz with one count of conspiracy to launder money and two counts of mail fraud. In May 1998,

2

pursuant to the pre-indictment plea agreement, Arnaiz pleaded guilty to the one count of conspiracy to launder money and one count of mail fraud. In return for the plea, the government dropped the other mail fraud count.

Arnaiz failed to appear at his scheduled sentencing hearing, on account of his having been hospitalized for high blood pressure. As a result, the district court rescheduled the sentencing hearing. Arnaiz again failed to appear, but this time the district court issued a warrant for his arrest and an indictment was returned for one count of criminal contempt, in violation of 18 U.S.C. § 401(3), and one count of failure to appear, in violation of 18 U.S.C. § 3146. After a prolonged search, Arnaiz was apprehended in April 2003, and eventually pleaded guilty to both the contempt and failure to appear charges. The court consolidated the sentencing of the fraud and money laundering convictions from 1998 with the sentencing of the contempt and failure to appear convictions from 2003.

Arnaiz filed a motion to withdraw his guilty plea, a motion to dismiss the indictment, and a motion for a downward departure based on time served in an unrelated case. The district court denied all three motions and sentenced Arnaiz to 151 months imprisonment.

## I.

Arnaiz's first argument on appeal is that the district court erred by denying

his motion to withdraw his guilty plea and his motion to dismiss the indictment. The denial of motions to withdraw and motions to dismiss are reviewed for abuse of discretion. See United States v. Freixas, 332 F.3d 1314, 1316 (11th Cir. 2003); United States v. Noriega, 117 F.3d 1206, 1211 (11th Cir. 1997).

As for the motion to withdraw, Arnaiz argues that his trial attorney improperly advised him to plead guilty to an indictment that was, Arnaiz says, based entirely on his own immunized testimony. Federal Rule of Criminal Procedure 11 provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Although this portion of the rule is to be liberally construed, "there is no absolute right to withdraw a guilty plea prior to imposition of a sentence." United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1998). When deciding whether to grant a motion to withdraw a guilty plea, "the district court may consider the totality of the circumstances surrounding the plea . . . includ[ing] (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Id. at 471–72 (internal citations omitted).

4

In ruling on Arnaiz's motion to withdraw his guilty plea, the district court went through the Buckles factors. Specifically, the court found that Arnaiz own testimony indicated that he had close assistance of counsel. At the plea colloquy, Arnaiz stated that he had discussed the plea agreement, and charges against him, at length with his attorney. He further assured the court that he was satisfied with his representation and had not been forced to plead guilty. As for whether the plea was knowing and voluntary, Arnaiz testified that he had read the plea agreement, fully understood its terms before signing, understood his rights and that he was waiving those rights by pleading guilty, and understood the charges against him and what the government would have to prove. With regard to judicial resources, the district court noted that, given the complicated nature of the Medicare fraud and money laundering scheme, a trial would be lengthy and complex.

Further, as for prejudice to the government, the district court observed that Arnaiz did not seek to withdraw his guilty plea until five years after he pleaded guilty to the mail fraud and money laundering charges. Reassembling the evidence after five years would be difficult for the government and witnesses crucial to the government's case may have forgotten important details or have become unavailable. The district court went on the find that Arnaiz's trial counsel was not ineffective for advising him to plead guilty because there was sufficient evidence,

5

independent of Arnaiz's immunized testimony, to support the indictment. On this record, the district court committed no error in denying Arnaiz's motion to withdraw his guilty plea.[1]

With regard to Arnaiz's motion to dismiss the indictment, because he voluntarily pleaded guilty with the advise of competent counsel, he has waived any non-jurisdictional challenges to his indictment. See United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 762 (1989).

**II.**

Arnaiz next argues that the government breached the terms of the plea agreement by failing to recommend a sentence at the low end of the guideline range and, instead, urging the court to impose the highest permissible sentence. Arnaiz failed to raise this contention before the district court.

"Whether the government has breached a plea agreement is a question of law that we review de novo. If, however, the district court affords a defendant an opportunity to object after the imposition of sentence, and he fails to do so, any objections to the sentence are barred absent manifest injustice." United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998). The manifest injustice inquiry is

---

[1] Arnaiz also argues that the district court abused its discretion in denying his request for an evidentiary hearing. The district court had sufficient evidence on which to base its ruling and did not abuse its discretion by refusing to hold an evidentiary hearing.

equated with a review for plain error.  Id.

"Under plain-error review, the defendant has the burden to show that there is (1) error (2) that is plain and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) (internal citations and quotations omitted).

Contrary to Arnaiz's assertions, the government upheld its end of the plea agreement at sentencing.  As specified by the agreement, the government reiterated its recommendation for an acceptance-of-responsibility reduction and filed a substantial-assistance motion.  Though the government did advise the district court that it was free to reject its recommendations, such a statement is in accord with the plea agreement.  Nothing the government did was in violation of the terms of the plea agreement.  Though we find it unlikely that Arnaiz would prevail on any of the latter three prongs of the plain error test, it is unnecessary to reach those issues because he has not demonstrated that there was an error.

## III.

Arnaiz third argument is that district court erred by denying his motion for a downward departure pursuant to U.S.S.G. § 5K2.0.  Arnaiz's motion asked that the

district court reduce his sentence by the amount of time that he contends he was illegally detained in an unrelated case. "[A] district court's discretionary refusal to depart downward is not appealable, unless the refusal was based on an erroneous belief that the court did not have the statutory authority to depart from the guideline range." United States v. Sanchez-Valencia, 148 F.3d 1273, 1274 (11th Cir. 1998).

There is nothing in the record to indicate that the district court was unaware of its authority to depart downward. Thus, we lack jurisdiction to review the district court's denial of Arnaiz's motion. See id.

**IV.**

In his fourth issue on appeal, Arnaiz argues that the district court erred during sentencing by attributing $24 million worth of loss to his Medicare fraud scheme. Though Arnaiz concedes that he stipulated in the pre-indictment plea agreement that the loss resulting from his fraud crime exceeded $20 million, he nevertheless argues that his agreement to that amount was based on the misguided advice of his trial counsel. As a result, he says, he should not have been held accountable for that amount. He argues that the evidence does not support the district court's conclusion that the loss exceeded $20 million.

The district court's fraud loss calculation is a factual determination

8

reviewable only for clear error. United States v. Renick, 273 F.3d 1009, 1025 (11th Cir. 2001). "The guidelines do not require the government to make a fraud loss determination with precision; the figure need only be a reasonable estimate given the information available to the government." Id. at 1025. If challenged, the government has the burden of coming forward with "reliable and specific evidence." Id. (quotation omitted). Overall, it must demonstrate its loss calculation by a preponderance of the evidence. Id. at 1027.

Several factors support the loss calculation in this case. First, Arnaiz knowingly and voluntarily admitted in his plea agreement and at the plea colloquy that the amount of loss involved in the fraud scheme was "more than $20 million." Arnaiz also admitted that the fraud scheme was "very lucrative" and yielded "millions of dollars," and that during one six-month period alone he had billed Medicare for between ten and twenty million dollars.

Furthermore, the government presented witnesses and exhibits at sentencing to support the loss calculation. Those exhibits included checks signed by Arnaiz. The government's auditor testified that, in addition to the checks, he had six other boxes with similar evidence indicating that the loss amount involved in the fraud scheme amounted to $24 million.

On this evidence, the district court's loss calculation of $24 million was not

clearly erroneous.

## V.

Arnaiz next argues that the district court erred by requiring him to pay $24 million in restitution because there was no evidence that he had the ability to pay it. However, "[u]nder the [Mandatory Victims Restitution Act of 1996], an award of restitution is no longer discretionary. The district court must order restitution in the full amount of each victim's losses without consideration of the defendant's economic circumstances." United States v. Siegel, 153 F.3d 1256, 1260 (11th Cir. 1998). The MVRA applies to orders of restitution for defendants whose conspiracies began before, but ended after, the MVRA's effective date of April 24, 1996. United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000).

Arnaiz pleaded guilty to engaging in a conspiracy to launder money between May of 1994 through July of 1997. Because his conduct ended after the effective date of the MVRA, its provisions are applicable to him. That the district court did not specify which of the two counts the restitution is for makes no difference. The two counts, and the money involved in them, are interrelated. The district court did not err in its order of restitution.[2]

---

[2] Arnaiz also argues that, if restitution was warranted under the MVRA, the district court erred by not advising him at the Rule 11 colloquy that he might be responsible for restitution. He is mistaken. The district court specifically advised Arnaiz that restitution could be ordered. Plea Colloquy Tr. at 21.

10

## VI.

Arnaiz's final contention is that he was sentenced in violation of <u>United States v. Booker</u>, 543 U.S. __, 125 S. Ct. 738 (2005). He argues both <u>Booker</u> constitutional error because he was sentenced based on facts that were neither proven to a jury nor admitted by him, and <u>Booker</u> statutory error because he was sentenced under a mandatory guidelines regime. Because Arnaiz failed to raise this issue before the district court, our review is only for plain error. <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir.), <u>cert. denied</u>, ___ S. Ct. ___, 2005 WL 483174 (June 20, 2005). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u> (quotations and citation omitted).

As for his assertion of <u>Booker</u> constitutional error, there was no error at all because Arnaiz admitted both in his plea agreement and at the plea colloquy all of the facts the district court used in calculating his sentence.

By sentencing Arnaiz under a mandatory guidelines scheme, however, the district court committed a <u>Booker</u> statutory error that is plain. <u>See</u> <u>United States v.</u>

11

Shelton, 400 F.3d 1325, 1330–31 (2005).  Arnaiz, however, has failed to demonstrate that his substantial rights have been affected by the error, as required by the third prong of the plain error test, Rodriguez, 398 F.3d at 1299.  To carry his burden, Arnaiz had to demonstrate that "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case."  Id. at 1301.  Arnaiz has presented no evidence showing a reasonable probability that the district court would have given him a lesser sentence had he been sentenced under an advisory guidelines regime.

**VII.**

Based on the foregoing, Arnaiz's appeal is dismissed as to his challenge of the district court's denial of his motion for a downward departure and affirmed in all other respects.

DISMISSED IN PART, AFFIRMED IN PART.