**UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,**

v.

**Ronnie J. GREER, Defendant–Appellant–Cross–Appellee.**

**No. 05–11295**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Jan. 10, 2006.

---

William J. Mason, Columbus, GA, for Greer.

Dean S. Daskal, Columbus, GA, for U.S.

sentence and the *Booker* ruling underlying it.

Before BLACK, CARNES and PRYOR, Circuit Judges.

CARNES, Circuit Judge:

The Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), provides a minimum mandatory sentence of fifteen years for anyone who violates 18 U.S.C. § 922(g) after three convictions for a violent felony or a serious drug offense. In this case the jury convicted Ronnie J. Greer of violating 18 U.S.C. § 922(g)(1), and it also found that he had been convicted of at least one of the three previous felonies listed in the indictment. Those three listed state court convictions were for separately committed offenses of terroristic threats. There is no dispute that court documents introduced at trial not only proved those three convictions but also proved that each was for a "violent felony" for ACCA purposes.

The district court nonetheless refused to impose the mandatory minimum sentence on Greer because the jury had not determined—and it was never asked to determine—whether Greer's three previous convictions were for violent felony crimes. The district court believed that *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require that the jury, and not the judge, find that a previous conviction was for a violent crime for ACCA purposes. As a result of that belief, the district court imposed a sentence of only 78 months, instead of the 180 months mandated by the ACCA. Greer has appealed his conviction, and the government has cross-appealed the 78–month

## I.

On July 6, 2002, a five-year-old boy, who was outside with his sister playing on a utility trailer was killed when a pipe bomb that had been stored in a box on the trailer exploded. Greer's residence was next door, he had been overheard in the past talking about "blowing people up," and he was a former employee of a business that used pipes consistent with the type used in the explosive device. He quickly became a suspect. Three days after the fatal explosion federal and state law enforcement officers searched Greer's residence pursuant to a federal search warrant. They did not find evidence that would support charging him in connection with the bomb, but they did find live ammunition in his house, including one pistol cartridge, two rifle cartridges, and a shotgun shell, all in plain view on a table just inside the front door.

No guns were found in the house, but the ammunition was enough to charge Greer with violation of 18 U.S.C. § 922(g)(1), which prohibits a felon from possessing ammunition. To establish the "felon" part of the charge, the indictment alleged that Greer had three prior felony convictions for making terroristic threats. It also charged that the provisions of 18 U.S.C. § 924(e)(1) were applicable, subjecting Greer to a fifteen-year mandatory minimum sentence upon conviction.

At trial, Jay Bagwell, who is a special agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, and David Smith, who is an agent for the Georgia Bureau of Investigation, testified about participating in the search of Greer's residence. They told the jury that four live

rounds of ammunition, which had traveled in interstate commerce, were found on a table inside the house. Although Greer had not been at the house when it was searched, the agents described documents and other items they found in the house that indicated Greer lived there: mail, bills, letters Greer had written and signed, and a lot of notebooks he had compiled. Some of the documents had recent dates on them. The agents also told of signs—such as a well-stocked kitchen and toiletries in the bathroom—indicating that the house was occupied.

Brad Donnelly, another ATF agent, testified that Greer had been convicted in the state courts of Georgia three times for the felony of "terroristic threats." Those three separate convictions occurred in 1989, 1993, and 2000. Although that state crime carries the possibility of years in prison, Greer received probation each time.

After the government had presented its case in chief, Greer's counsel failed to move for a judgment of acquittal. Greer then testified as the only witness in his defense. He admitted living in Cusseta, Georgia, at the residence that was searched, and said that he had lived there since 1988. Greer admitted knowing that ammunition was on the table. He first said that the bullets the agents found were not at the house when he moved in four years before the search "unless they were on the outside of the house," but then said that "they could have been [sic] when I moved into the house, the bullets were there." In any event, he acknowledged knowing the ammunition was there. The defense called no other witnesses.

The jury was instructed that it could convict Greer only if it found beyond a reasonable doubt that he had knowingly possessed ammunition which had been shipped or transported in interstate commerce, and before he possessed the ammunition he had been convicted of a crime punishable by imprisonment for a term in excess of one year. The jury found Greer guilty as charged.

As we have mentioned, the district court determined that the ACCA mandatory minimum sentence of fifteen years could not be applied in this case in light of the *Booker* decision. Having freed itself from the strictures of the ACCA, the court calculated the guideline range to be 63–78 months imprisonment and sentenced Greer to 78 months.

## II.

■ Greer raises several contentions against his conviction. First, he asserts that the government failed to prove beyond a reasonable doubt that he possessed the ammunition found in his home. We review the sufficiency of the evidence *de novo*, viewing the evidence and making all reasonable inferences in favor of the verdict. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir.2005).

■ When a defendant does not move for a judgment of acquittal at the close of the evidence, he must shoulder a somewhat heavier burden: we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice. *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir.2002). "This standard requires the appellate court to find that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* Greer did not move for a judgment of acquittal, but we will put that failure aside here because it does not matter. Even if he had moved for a judg-

ment of acquittal, the result of this appeal would be the same.

■ The only element of the crime defined in 18 U.S.C. § 922(g)(1) that Greer argues was not proven beyond a reasonable doubt is knowing possession of the ammunition. *See generally United States v. Wright,* 392 F.3d 1269, 1273 (11th Cir. 2004), *cert. denied,* — U.S. ——, 125 S.Ct. 1751, 161 L.Ed.2d 615 (2005). The government need not prove actual possession in order to establish knowing possession: it need only show constructive possession through direct or circumstantial evidence. *Id.* Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control. *United States v. Gunn,* 369 F.3d 1229, 1235 (11th Cir.2004), *cert. denied,* 543 U.S. 937, 125 S.Ct. 324, 160 L.Ed.2d 244 (2004).

■ The ammunition was found in plain view on a table just inside the front door. Even before Greer testified in the defense part of the case, there was sufficient evidence that he lived in the house and had been there not long before the search. There was no evidence in either the government case or the defense case that anyone else lived in the house with Greer. His argument that the jury could not reasonably find beyond a reasonable doubt from this evidence that he knowingly possessed the ammunition is frivolous.

■ Greer also contends that the government failed to prove that venue was proper in the Columbus Division of the Middle District of Georgia. The government did not put in evidence that Cusseta, Georgia, where Greer lived and the ammunition was found, was in the territorial jurisdiction of the district court; there was no stipulation to venue; and there was no discussion of whether judicial notice could be taken of the necessary facts relating to venue. The venue issue simply was not raised at trial.

■ A defendant has a Sixth Amendment right to be tried in the district in which he committed the offense. *United States v. Roberts,* 308 F.3d 1147, 1151 (11th Cir.2002). However, a defendant waives an objection to venue by failing to raise it before trial, subject to the exception that objecting at the close of evidence is soon enough if the indictment alleges an incorrect venue and the defendant was not aware of that defect until the government presented its case. *Id.* at 1151–52. Greer did not raise an objection to venue at trial or at the close of evidence, and thus any venue issue was waived.

■ Greer's final contentions involve his trial counsel's failure to move the district court for a judgment of acquittal and failure to object on venue grounds. He says that those failures deprived him of effective assistance of counsel. Generally, we do not address ineffective assistance claims on direct appeal, except in the rare instance when the record is sufficiently developed for us to do so. *United States v. Verbitskaya,* 406 F.3d 1324, 1337 (11th Cir. 2005). This is one of those rare instances.

■ To prevail on a claim of ineffective assistance of counsel, Greer must prove: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that he was thereby prejudiced, that is, there is a reasonable probability that but for counsel's deficient performance, the result of his trial would have been different. *Id.* at 1337–38 (*citing Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984)). The preju-

dice component disposes of both of Greer's ineffectiveness claims.

■ As for the claim arising from his counsel's failure to move for a judgment of acquittal on the sufficiency of the evidence not relating to venue, it did not matter. As we have already explained, the evidence the government presented during its case was sufficient to convict Greer. His conviction would have been upheld even if there had been a timely acquittal motion.

■ As for the claim arising from trial counsel's failure to object on venue grounds, "[t]he government must support its choice of venue only by a preponderance of the evidence." *United States v. Smith,* 918 F.2d 1551, 1557 (11th Cir.1990) (internal quotation omitted). This burden can be met through direct or circumstantial evidence and judicial notice can be used. *United States v. Males,* 715 F.2d 568, 569–70, 570 n. 2 (11th Cir.1983) (holding that although there was no direct testimony that the crime occurred in Dade County, Florida, venue was established because there were sufficient references to the crime taking place in Miami, and stating that this Court can take judicial notice of Miami's location in Dade County). Law enforcement officers testified during the government's case that the search was conducted and the live ammunition was found at Greer's house, located at 380 Highway 520 in Cusseta, Georgia. We take judicial notice that Cusseta, Georgia is the county seat of Chattahoochee County which is within the Columbus Division of the Middle District of Georgia. *See* 28 U.S.C. § 90(b)(3); *Males,* 715 F.2d at 570 n. 2. Had Greer's trial counsel raised a venue objection at trial, the district court would have taken judicial notice of the same fact, and we would have upheld its

action in doing so. Greer was not prejudiced in the least by his counsel's failure to bring up venue. This ineffective assistance of counsel claim, like Greer's other one, fails.

That is the end of Greer's appeal. We turn now to the government's cross-appeal.

### III.

■ The government's cross-appeal puts at issue the district court's refusal to impose the fifteen-year mandatory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Pursuant to the ACCA, any defendant who is convicted of violating § 922(g), including § 922(g)(1), as Greer was, who has three previous convictions for a violent felony, must be sentenced to not less than fifteen years. The term "violent felony" is defined in the ACCA as any crime that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Greer's three previous convictions, each of which was listed in the indictment, were all for making terroristic threats in violation of O.C.G.A. § 16–11–37. As the district court explained, that Georgia statute prohibits both violent and non-violent behavior, so proof that a defendant was convicted for violating it does not prove that he has been convicted of a violent felony. *United States v. Greer,* 359 F.Supp.2d 1376, 1380–81 (M.D.Ga.2005).

Greer did not admit at trial that he had three prior convictions for making terroris-

tic threats, but the uncontradicted evidence the government introduced at sentencing proved that he did. *Id.* at 1381 n. 7. The documentary evidence included the indictments underlying the three prior convictions, and those indictments show that each conviction was for threatening to commit a violent crime, *id.,* which means it is a "violent felony" conviction for ACCA purposes, *see* § 924(e)(2)(B)(i). As the district court put it, "substantial additional evidence beyond the fact of the conviction is available in this case to prove that Defendant's three prior convictions were violent ones." *Id.* at 1381. There is no factual question.

On the legal question before us the Supreme Court decision that is closest is the pre-*Booker* and pre-*Apprendi* decision in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In that case the Court held that the factual issue of whether a defendant has been convicted of an "aggravated felony" for 8 U.S.C. § 1326(b)(2) enhancement purposes is not to be treated as an element of the offense for constitutional purposes, and as a result the prior conviction is not required to be alleged in the indictment. *Id.* at 226, 118 S.Ct. at 1222 ("[T]he subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist."). The district court's decision cannot be reconciled with the full force of *Almendarez–Torres.* As we have said several times, unless and until the Supreme Court specifically overrules *Almendarez–Torres,* we will continue to follow it. *E.g., United States v. Camacho-Ibarquen,* 410 F.3d 1307, 1316 n. 3 (11th Cir.2005) ("[T]he Supreme Court has not explicitly overruled *Almendarez–Torres.* As a result, we must follow *Almendarez–Torres.*"); *United States v. Guadamuz-Solis,* 232 F.3d 1363 (11th Cir.2000) ("*Al-*

*mendarez–Torres* remains the law until the Supreme Court determines that *Almendarez–Torres* is not controlling precedent.").

More than once we have specifically rejected the argument that *Almendarez–Torres* was undermined by the *Apprendi* decision. *See United States v. Marseille,* 377 F.3d 1249, 1257–58 (11th Cir.2004) (rejecting an *Apprendi*-based attack by a defendant whose sentence was enhanced under the ACCA, U.S.S.G. §§ 4B1.1 and 4B1.4(a)); *United States v. Miles,* 290 F.3d 1341, 1348 (11th Cir.2002) (rejecting an *Apprendi*-based attack on a life sentence imposed under the ACCA where the indictment did not allege and jury did not find that the defendant had three prior violent felony convictions).

Our decision in *United States v. Shelton,* 400 F.3d 1325, 1329 (11th Cir.2005), is contrary to the implication of the district court's ruling, which is that *Booker* did what *Apprendi* did not—partially overrule the *Almendarez–Torres* decision. In *Shelton,* we said this:

Shelton first argues that the district court erred when it enhanced his sentence based on a judicial fact-finding of drug quantity and based on his prior convictions. We readily dispense with that issue. The Supreme Court consistently has rejected Shelton's argument that a district court errs when it considers prior convictions in sentencing a defendant under the Guidelines. In *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court "held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for pur-

poses of enhancing a sentence." *United States v. Marseille*, 377 F.3d 1249, 1257 (11th Cir.2004) (citation omitted). This conclusion was left undisturbed by *Apprendi, Blakely*, and *Booker*.

Moreover, in *Booker*, the Supreme Court reaffirmed its holding in *Apprendi. See Booker*, 125 S.Ct. at 756 (opinion of Stevens, J.) (reaffirming that "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" (emphasis added)). Thus, a district court does not err by relying on prior convictions to enhance a defendant's sentence.

400 F.3d at 1329. In a footnote attached to that passage in *Shelton*, we cited the Sixth Circuit's decision in *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir.2005), which held that "there is no language in *Booker* suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to *Apprendi* allowing district courts to consider the fact and nature of prior convictions, without submitting those issues to the jury." *See also United States v. Marcussen*, 403 F.3d 982, 984 (8th Cir. 2005) (concluding that *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), "lends further support to the rule that the sentencing court, not a jury, must determine whether prior convictions qualify as violent felonies").

To be fair, the district court's decision in this case was issued before our decision in *Shelton*. It also preceded our statement in *United States v. Orduno–Mireles*, 405 F.3d 960, 962 (11th Cir.2005), that "[p]ut another way, because the prior-conviction exception remains undisturbed after *Booker*, a district court does not err by relying on prior convictions to enhance a defendant's sentence." (footnote omitted). And it came before we, in *United States v. Gallegos–Aguero*, 409 F.3d 1274, 1277 (11th Cir.2005), found "no merit in [the] argument that the Sixth Amendment requires that a jury, not a judge, must determine whether [a] prior conviction is within the category of offenses specified in [U.S.S.G.] § 2L1.2(b)(1)(A)(vii)."

The district court thought that even if *Almendarez–Torres* still permits a judge to determine "the existence of a prior conviction," the principles of *Apprendi* extended through *Booker* forbid a judge from determining "the factual nature of a prior conviction." 359 F.Supp.2d at 1379–80. That distinction between factual existence and factual nature is not justified in view of our decisions describing the non-effect of *Apprendi* and *Booker* on the *Almendarez–Torres* rule. It is not justified by the language or reasoning of those three Supreme Court decisions or by the constitutional principles underlying them.

The district court concluded that "[d]etermining the factual nature of a prior conviction is materially different from simply finding the existence of a prior conviction for recidivism purposes." *Id.* at 1380. We disagree, or at least we disagree that any difference points in the direction the district court thought. Both determinations are factfindings, the one answering the existence question is more purely factual than the one answering the nature question. There is no reason the Constitution would permit a judge to decide whether the person the conviction documents describe was the defendant but forbid the judge from deciding what type of crime those same documents describe.

The district court described the finding of whether the defendant has been convicted as "a simple ministerial determination" in contrast to the finding about "the qualitative nature of the prior convictions." *Id.* The former is no less a factfinding than the latter, and neither is ministerial. Both determinations can be problematic. Think of the less than perfect nature of some of the evidence that is offered to show a prior conviction and to prove that it was the defendant who was convicted. And think of the number of John Johnsons, Jim Smiths, and William Browns there are in this country. If a judge may determine the facts about whether the defendant has been convicted, a judge may determine the facts about the type of crime for which he was convicted.

The district court gave a lot of thought to this issue, and the opinion it published is not without its persuasive points. Realistically viewed, however, the district court's conclusion is less an application of existing precedent than a prediction of what the Supreme Court will hold when it chooses to address this issue in the future. Taking the principles stated in *Apprendi* and *Booker* and projecting them forward, the district court envisioned the overruling of at least some of the *Almendarez–Torres* decision. That prediction probably is correct; the Supreme Court may well overrule *Almendarez–Torres.* *See Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 1264, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring) (counting noses to come up with a majority of justices ready to overrule the *Almendarez–Torres* decision); *cf. Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1115 (11th Cir.2001) ("You don't need a weatherman to know which way the wind blows.") (quoting Bob Dylan, *Subterranean Homesick Blues, on Bringing it All Back Home* (Columbia 1965)).

The problem with lower courts basing decisions on predictions that the Supreme Court will overturn one of its own decisions is that the Supreme Court has repeatedly told us not to do it. *Hohn v. United States,* 524 U.S. 236, 252–53, 118 S.Ct. 1969, 1978, 141 L.Ed.2d 242 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."); *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–25, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision."). We take that admonition seriously. *See Eng'g Contractors Ass'n of S. Fla. Inc. v. Metro. Dade County,* 122 F.3d 895, 908 (11th Cir.1997) ("Of course, we take that admonition seriously."); *Brisentine v. Stone & Webster Eng'g Corp.,* 117 F.3d 519, 525 (11th Cir.1997); *Scala v. City of Winter Park,* 116 F.3d 1396, 1399 n. 2 (11th Cir.1997) (following an earlier Supreme Court decision even though later decisions of the Court had "cast some doubt" on it); *Florida League of Prof'l Lobbyists, Inc. v. Meggs,* 87 F.3d 457, 462 (11th Cir.1996) ("We take this admonition to heart, and we decline to take any step which might appear to overrule [prior Supreme Court decisions].").

We need not reach the alternative argument of the government that, even if *Al-*

*mendarez–Torres* were overruled by the Supreme Court, the mandatory minimum sentence for a defendant who is not an armed career criminal is 120 months. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2); *Harris v. United States,* 536 U.S. 545, 568, 122 S.Ct. 2406, 2420, 153 L.Ed.2d 524 (2002).

## IV.

The conviction is AFFIRMED. The sentence is VACATED and the case is REMANDED for resentencing consistent with this opinion.