[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 2, 2005
THOMAS K. KAHN
CLERK

No. 04-16646
Non-Argument Calendar

_____

D.C. Docket No. 04-00093-CR-ORL-28JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE CRUZ PAULINO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 2, 2005)

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Jose Cruz Paulino appeals his sentence for conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846. Paulino asserts: (1) the district court erred in denying him a minimal or minor-role reduction, U.S.S.G. § 3B1.2; and (2) in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005), the district court erred in sentencing him under a mandatory guidelines system. We vacate and remand for resentencing consistent with *Booker*.

## I. DISCUSSION

A. *Minimal or Minor-Role Reduction*

We review a district court's factual determination regarding whether a defendant is eligible for a reduction for role in the offense for clear error only.[1] *United States v. De Varon*, 175 F.3d 930, 934 (1999) (en banc). The proponent of a role adjustment bears the burden of establishing his role in the offense by a preponderance of the evidence. *Id.* We will not find clear error unless we are "left with a definite and firm conviction that a mistake has been committed." *Crawford*, 407 F.3d at 1177 (quotation marks and citation omitted).

---

[1] Our pre-*Booker* standards of review concerning the district court's application of the sentencing guidelines still apply post-*Booker*. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005)

Pursuant to U.S.S.G. § 3B1.2, a district court can reduce a defendant's base offense by two to four levels if the defendant was a "minimal" or "minor" participant in the offense. A defendant is a minimal participant where he is "among the least culpable of those involved in the conduct of a group." The defendant's lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others is indicative of a minimal role, and such adjustments are to be given infrequently. U.S.S.G. § 3B1.2, comment. (n.4). A defendant is a minor participant when he "is less culpable than most other participants," but his role could not be described as minimal. *Id.*, comment. (n.5). A defendant who is held accountable only for the conduct in which he was personally involved and who performs a limited function in the criminal activity is not precluded from consideration for an adjustment. *Id.*, comment. (n.3(A)).

In determining a defendant's role in an offense, a district court (1) must consider the defendant's role in the relevant conduct for which he has been held accountable at sentencing, and (2) may also consider his role as compared to that of other participants in his relevant conduct. *De Varon*, 175 F.3d at 940, 944. With regard to the first prong of this test, the district court should grant a downward adjustment for a minor role in the offense only if the defendant can establish that he played a relatively minor role in the conduct for which he has

3

already been held accountable. *Id.* at 944. "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." *Id.* at 941. Additionally, drug "courier status in and of itself is not dispositive of whether a defendant is entitled to or precluded from receiving" a minor-role reduction. *Id.* at 942. In the drug courier context, the amount of drugs is a "material consideration" in determining the defendant's role, because the amount of drugs in a courier's possession "may be the best indication of the magnitude of the courier's participation in the criminal enterprise." In extreme cases, the amount of drugs may even be dispositive of the defendant's role. *Id.* at 943. In determining the defendant's role in the drug courier context, the district court should consider several factors, including the "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." *Id.* at 945.

As to the second prong of the *De Varon* test—the defendant's role as compared to that of other participants in the relevant conduct—the district court should only consider other participants who are "identifiable or discernable from

the evidence."  The fact a defendant's role is less than that of other participants is not dispositive, as it is possible that none of the participants are minor participants. The defendant must prove that he was less culpable than most other participants. *Id.* at 944.

With regard to the first prong of the *De Varon* test, Paulino was held accountable for a larger quantity of marijuana than he actually participated in storing.  Paulino was held responsible for 1,496 kilograms of marijuana. However, the PSI indicates the quantity of marijuana unloaded on Paulino's yard and later stored in his home was only 900 pounds, or 408.24 kilograms.[2]  Paulino additionally possessed another 47 pounds of marijuana that was given to him previously by the co-conspirators.  This amounted to a total of 947 pounds, or 429.56 kilograms, less than the 1,496 kilograms involved in the whole conspiracy.

On the other hand, a significant quantity of drugs was involved in the conspiracy, even taking into account only the 429.56 kilograms that Paulino stored in his home.  This is a "material consideration" in determining Paulino's role, because it "may be the best indication of the magnitude of the courier's participation in the criminal enterprise."  *Id.* at 943.  Furthermore, in the drug

---

[2] According to the measurement conversion table in the guidelines manual, 1 pound is equal to 0.4536 kilograms.  U.S.S.G. § 2D1.1.

courier context, which is similar to the role Paulino played, the district court considers the "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." *Id.* at 945. As noted above, the quantity of the drugs, and presumably their market value, was substantial. Paulino was aware the offense involved a large quantity of drugs because he personally helped move 900 pounds of marijuana into his residence. Also, Paulino was to be paid $10,000, a significant sum, for storing the drugs. With regard to Paulino's role in planning the scheme, the Government noted at sentencing, without objection from Paulino, that Paulino had introduced Todd, a major participant in the conspiracy, to several of the co-conspirators in the scheme. Finally, with regard to role in the distribution, Paulino claims he was to have no role in the ultimate distribution of the drugs. However, no information was presented either in the PSI or at sentencing concerning how or by whom the drugs were to be distributed. As the proponent of the role adjustment, Paulino had the burden of establishing his role by a preponderance of the evidence, and he cannot simply state he was to have no role in the distribution without any evidence to support that assertion. *Id.* at 934.

As for the second prong of the *De Varon* test, Paulino did not establish he was less culpable than most other participants. *Id.* at 944; U.S.S.G. § 3B1.2,

comment. (n.5).  As the Government pointed out, Paulino agreed to store over 900 pounds of marijuana in his residence.  He also helped load the drugs into his house.  Although Paulino claims he was only supposed to store the drugs "for a short period of time," the record contains no evidence concerning the amount of time the drugs were to stay in Paulino's custody.  Also, as noted above, the Government stated at sentencing, without objection from Paulino, that it was Paulino who initially introduced Todd to several of the co-conspirators in the scheme.  By helping to recruit participants and agreeing to store a sizeable quantity of marijuana in his personal residence, Paulino cannot show he was less culpable than most of the other participants, several of whom simply helped load and unload the marijuana or acted as look-outs.

Accordingly, based upon the foregoing, the circumstances of this case do not establish "a definite and firm conviction that a mistake has been committed" with regard to the district court's failure to award a minimal or minor-role reduction.  Therefore, the district court did not clearly err in denying such a reduction.

B.    *Blakely/Booker*

Although Paulino bases the arguments in his brief around the plain error standard of review, he raised a *Blakely* objection before the district court.  Thus,

7

we review his sentence de novo, but will reverse only for harmful error.  *See United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005).  We have clarified there are two types of *Booker* error: (1) Sixth Amendment, or constitutional, error based upon sentencing enhancements imposed under a mandatory Guidelines system neither admitted by the defendant nor submitted to a jury and proven beyond a reasonable doubt; and (2) statutory error based upon sentencing under a mandatory Guidelines system.  *United States v. Shelton*, 400 F.3d 1325, 1329–30 (11th Cir. 2005).  We turn directly to statutory error.

Because the district court sentenced Paulino under a mandatory Guidelines system, statutory error exists.  *See id.*  "A non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but a very slight effect.  If one can say with fair assurance . . . that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error."  *United States v. Mathenia*, 409 F.3d 1289, 1292 (11th Cir. 2005) (internal quotation marks and brackets omitted).  The Government has the burden of showing the error was harmless.  *Id.*

Although the Government points to the fact Paulino's Guideline range was 51 to 57 months' imprisonment, and the district court's sentence of 52 months

exceeded the minimum sentence the district court could have given Paulino under the mandatory Guidelines system by one month, this fact alone is not enough to meet the Government's burden of showing harmless error. There is nothing in the record to indicate whether the district court would have imposed a different sentence if it had applied the Guidelines in an advisory rather that mandatory fashion.[3] Thus, we simply do not know what the sentencing court would have done had it understood the Guidelines to be mandatory, and cannot say with fair assurance that Paulino's sentence was not swayed by the error. *See id.* Thus, the Government cannot meet its burden of showing the mandatory application of the Guidelines was harmless.

## II. CONCLUSION

The district court did not err in refusing to grant Paulino a minor-role reduction. The district court did err, however, in sentencing Paulino under a mandatory Guidelines system and that error was not harmless. Thus we vacate Paulino's sentence and remand for resentencing in light of *Booker*. We note the district court correctly calculated Paulino's Guidelines range of 51 to 63 months'

---

[3] During the course of the sentencing, the district judge commented that Guideline sentencing in the state and federal system did not really amount to "guidelines," but rather "sentencing requirements," and noted it would be "interesting" to see how actual guidelines would work. The judge did not make any comments concerning how such a system would affect its ruling, however.

imprisonment. *See United States v. Crawford*, 407 F.3d 1174, 1178–79 (11th Cir.

2005) (stating after *Booker*, district courts must consult the Guidelines and "[t]his

consultation requirement, at a minimum, obliges the district court to calculate

*correctly* the sentencing range prescribed by the Guidelines"). Thus, on remand

the district court is required to sentence Paulino according to *Booker*, considering

the Guidelines advisory range of 51 to 63 months' imprisonment and "other

statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." *Booker*, 125

S. Ct. at 757.[4]

   **VACATED AND REMANDED.**

---

[4] We do not mean to imply by our holding that on remand the district court must impose a lesser sentence. Rather, we merely hold the Government has not met its burden to show the statutory error was harmless. We also will not attempt to decide now whether particular sentences below the Guidelines range might be reasonable in this case.