[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14974

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 23, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00224-CR-TWT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHALANA C. MCFARLAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(November 23, 2007)**

Before BIRCH, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Chalana C. McFarland appeals her conviction and sentence on 170 counts of

money laundering, bank fraud, wire fraud and conspiracy to commit such acts as

well as obstruction of justice and perjury. McFarland asserts that the district court committed reversible error with regard to the admission of opinion testimony by certain government witnesses and of evidence that she possessed a false Florida driver's license. She also asserts that the 360-month sentence imposed was procedurally unreasonable either because the district court treated the Sentencing Guidelines as mandatory, or because the court gave undue weight to the Guidelines range and to certain factors listed in 18 U.S.C. § 3553(a) without sufficient consideration of some of the other factors. We affirm McFarland's conviction and sentence.

## I. BACKGROUND

McFarland was charged with conspiracy to commit various types of fraud and money laundering, all in violation of 18 U.S.C. § 371; bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (B)(i), and 2; obstruction of justice, in violation of 18 U.S.C. §§ 1503 and 2; and perjury, in violation of 18 U.S.C. § 1623. The charges arose from the allegation that McFarland and numerous co-conspirators defrauded mortgage lenders and insured depository financial institutions by inflating the fair market values of properties which were then used to secure fraudulent loans for straw buyers. McFarland, who

2

was the closing attorney for various lenders and a title insurance agent, wrote title insurance and closed mortgage loans on these properties, allegedly knowing that the proceeds would be divided among the co-conspirators rather than disbursed as had been as disclosed to the lenders. As a result of this conspiracy, lenders lost in excess of $10 million on more than 100 properties.

At trial, among other extensive evidence, the government presented the testimony of Robbie Taylor, who had been Executive Vice President of Attorneys' Title Fund at the time the fraud took place. Attorneys' Title Fund had provided closing protection letters and allowed McFarland to issue title policies for a number of her closings during the relevant period. Near the end of Taylor's testimony, after a series of questions about the procedures and safeguards for real estate closings Attorneys' Title Fund emphasizes to its authorized closers, the following interchange took place:

> **Government:** Have you become familiar with the problems on the files closed by Chalana McFarland in this case through the subsequent claims and so forth?
> **Taylor:** Somewhat.
> **Government:** Okay. Were the problems here created by fraud or created by inexperience?
> **McFarland's Attorney:** Objection your honor; calls for a conclusion. It, I think, ventures into the realm of the jury.
> **Court:** What do you say, Miss McKenzie [government attorney]?
> **Government:** Your honor, she's familiar with the transactions, has gone behind the transactions, and I believe . . .
> **Court:** You're going to have to lay a whole lot more foundation than that for that question.
> **Government:** Let me rephrase the question. Maybe she can answer it

specifically. You're aware that your firm requested specific files of Chalana McFarland?

> **Taylor:** Yes.
> **Government:** And have you determined through subsequent investigation that some of those files you requested at the time were, indeed, flip transactions?
> **Taylor:** Yes.

R5 at 431-32. McFarland's attorney made no objection to the rephrasing of the question or any reference to his previous objection on this point. He asked a few questions in re-crossexamination and the witness was excused.

Later, the government called Brenda Brown to testify. Brown had been a paralegal for McFarland during the relevant period. She had worked on most of the transactions at issue and, at the time of trial, had already pled guilty to participation in the mortgage fraud scheme. In the course of questions concerning an attempted audit of McFarland's closings by Attorneys' Title Fund, the following interchange took place:

> **Government:** Was the condition of the checks and the non-availability of the closing files due to ignorance on your – on the law firm's part?
> **McFarland's Attorney:** Objection, your honor, calls for speculation by this particular witness. It enters into the province of the jury.
> **Court:** Overruled.
> Government: Or was it due to deliberate acts?
> **Brown:** Deliberate acts.

R9 at 1025-26.

At another point in the trial, during the testimony of Lisa Bellamy, another of McFarland's paralegals during the relevant period, the government began asking questions about false identification documents obtained by firm employees for use

4

in flip transactions.  Before the trial, however, McFarland had filed a motion in limine seeking to exclude evidence of McFarland's possession of a false Florida driver's license on the ground that, unless direct relevance to the case were clearly shown, it might constitute impermissible character evidence in violation of Federal Rule of Evidence 404(b).  For this reason, McFarland's attorney objected to the question: "Do you know of any identification documents connected with the defendant in this case?"  R8 at 928.  The court overruled the objection.  However, as soon as Bellamy brought up the Florida license, and the questions began to turn to how Bellamy found out about the license, the court reversed its ruling, sustained the previously made objection, and immediately admonished the jury to disregard the discussion regarding the Florida license.  See id. at 929.

McFarland's attorney asked to discuss the issue at the next break in the trial.  During the break, McFarland's attorney moved for a mistrial on the ground that evidence of the Florida license, which was not clearly relevant to the case at hand, had been presented to the jury in violation of Federal Rule of Evidence 404(b).  The district judge stated that he "believe[d] the curative instructions were adequate" and denied the motion for a mistrial.  Id. at 935.  McFarland's attorney did not ask for any further curative instruction or otherwise argue that the curative instruction had been inadequate.  See id.

5

At the conclusion of McFarland's trial, the jury found her guilty of all 170 counts of the indictment against her.

At sentencing, the district court first calculated the applicable Guidelines range, to which calculation McFarland admitted no objection. McFarland then argued the sentence imposed ought to be below the Guidelines range (360 months to life in prison after the downward departure for cooperation) because each of her co-defendants had been sentenced to terms ranging from 5 to 87 months and, thus, for that and other reasons a 360-month sentence did not meet the requirements of 18 U.S.C. § 3553(a). The government argued for a sentence within the Guidelines range.

The court distinguished McFarland from her codefendants on the ground that each of them had accepted responsibility for their actions while she had "shown no remorse, . . . done nothing but tell one lie after another[, and] . . . done everything possible to try to obstruct the investigation in this case[.]" R16 at 135. The district judge then explained his duty to consider all factors listed in 18 U.S. C. § 3553(a), painstakingly explained his consideration of several of them and imposed a sentence at the low end of the Guidelines range. R16 at 172-74, 178.

## II. DISCUSSION

A. <u>Evidentiary Issues</u>

McFarland asserts that the court committed prejudicial error by allowing opinion testimony as to McFarland's intent by two government witnesses and by allowing evidence regarding her possession of a false Florida driver's license. She also argues that either separately or cumulatively these evidentiary issues constitute reversible error.

We review properly preserved challenges to a district court's evidentiary rulings for a clear abuse of discretion. <u>United States v. Tinoco</u>, 304 F.3d 1088, 1119 (11th Cir. 2002). In cases of abuse of discretion, we will reverse only if any error "affected the defendant's substantial rights." <u>Id.</u> (citation omitted). Challenges to evidentiary rulings that are not specifically made at trial are not preserved and so we review them under the plain error standard. <u>United States v. Williford</u>, 764 F.2d 1493, 1502 (11th Cir. 1985).

Fed. R. Evid. 701 permits a lay witness to testify "in the form of opinions or inferences . . . which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 704 permits lay opinion

7

testimony that is otherwise admissible even if "it embraces an ultimate issue to be decided by the trier of fact." We have also recognized that the 2000 addition of part (c) to Rule 701 was not intended to prohibit lay witness testimony by business owners and employees "based upon their particularized knowledge garnered from years of experience within [a given] field," when that testimony is helpful to the trier of fact and relevant to the issues presented in the case. Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003).

1. *Taylor's Testimony*

McFarland's objection to Taylor's testimony was sustained by the district court and so no impermissible testimony was admitted. McFarland now argues that the testimony elicited by the rephrased question constitutes impermissible opinion testimony, but her attorney made no such objection at trial. Accordingly, we review that admission of testimony for plain error.

A review of the transcript reveals that Taylor functioned as a fact witness, not as an expert witness. The overwhelming majority of questions preceding the question at issue here follow a narrative of her personal business dealings with McFarland and other members of McFarland's firm. Those questions that do not ask only for clarification of business terms or personal business practices based on

her particularized experience in the title insurance field. The government's rephrasing of its question to Taylor and her response draw solely upon her personal observations regarding her direct experiences in dealing with McFarland's closing files. This is further supported by the goverment's response to McFarland's objection: that the testimony should be allowed because Taylor was "familiar with the transactions, ha[d] gone behind the transactions." R5 at 431. Accordingly, we find that the testimony falls squarely within that permitted by Rules 701 and 704. There was no error, plain or otherwise.

2. *Brown's Testimony*

Brown's testimony was allowed over McFarland's objection and thus is reviewed for abuse of discretion. We first observe that Brown was also questioned as a fact witness rather than as an expert. Her testimony drew from her first-hand observations and experiences of the events and transactions at issue – in this case, particularly with regard to her own intent, and that of other members of her firm, to evade an audit by Attorneys' Title Fund. Second, with respect to her own participation, her answer to the question cannot be considered an opinion. Third, to the extent that she answered the question as to others at McFarland's firm, her answer was based on her own first-hand impression of the situation. Thus, her testimony fits squarely within that permitted by Rules 701 and 704. There was no

9

abuse of discretion in the court's overruling the objection. There is no error.

3. *Driver's License Evidence*

We review a refusal to grant a mistrial for abuse of discretion. United States

v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) (per curiam). If a district court

gives a curative instruction, we will reverse only if the evidence is so highly

prejudicial as to be incurable by the trial court's admonition. United States v.

Delgado, 321 F.3d 1338, 1347 (11th Cir. 2003) (quotations omitted).

McFarland's objection with respect to admission of testimony regarding the

false Florida driver's license was ultimately sustained. The court denied

McFarland's motion for mistrial on the ground that it had given a sufficient

curative instruction to the jury. McFarland did not then[1] and does not now argue

how the instruction was insufficient to cure any harm caused by the evidence. We

find that a passing mention that McFarland possessed a false Florida driver's

license in the context of all the other testimony and evidence in this case as to her

specific conduct in connection with the fraud is not so highly prejudicial as to be

incurable by the trial court's admonition. We find no abuse of discretion.

The cumulative effect of multiple errors may require reversal of an

---

[1]McFarland asserts that her lawyer argued the curative instruction was insufficient at trial, Appellant's Brief at 46-47, but the portion of the trial transcript she cites for that assertion does not reflect any such argument, nor does any other portion as far as we can see. See R8 at 935.

10

appellant's conviction where, in combination, those errors prejudice a defendant's right to a fair trial. Ramirez, 426 F.3d at 1353. Of the three issues McFarland raises, however, only one actually resulted in evidence wrongly admitted: the driver's license testimony. Accordingly, there can be no cumulative error, and, as previously discussed, any harm from the driver's license testimony was cured by the judge's instruction to the jury.

B. The Sentence

McFarland argues that the district judge effectively treated the Guidelines as mandatory. In particular, she points to the judge's statement that he felt it was his "duty" to impose a Guidelines sentence. R16 at 172. She also argues that her sentence is unreasonable because even if the court did not treat the Guidelines as mandatory, the judge gave undue weight to the Guidelines, the concept of deterrence, and her failure to acknowledge her guilt, and failed properly to consider other § 3553(a) factors.

First, we have recognized that application of the Guidelines as mandatory, as opposed to advisory, is statutory error under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). United States v. Shelton, 400 F. 3d 1325, 1330-31 (11th Cir. 2005). At sentencing, the judge did say he would "impose a Guidelines sentence in this case . . . because [he thought that it was his] duty in this case."

11

R16 at 172. However, the judge immediately clarified any ambiguity in that statement by explaining that"[i]n terms of deciding whether or not to impose a Guidelines sentence, I'm required to consider the factors in Section 3553(a) of Title 18." Id. The broader context of the judge's remarks, his explicit reference to an obligation also to consider § 3553(a) factors, and his detailed explanation of the reasoning behind the sentence imposed make it clear that he did not believe he was required to impose a Guidelines sentence. The court felt duty bound - not legally bound - to sentence within the Guidelines range. We see no statutory error under Booker.[2]

Second, we review sentences imposed under the post-Booker advisory Guideline scheme for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005) (per curiam). We have held that in sentencing, the district court must first correctly calculate a defendant's Guidelines range. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). Then, in consideration of the

---

[2]Because McFarland failed to raise any objection to her sentence based on perceived mandatory application of the Guidelines before the district court, we review this issue under the plain error standard. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied 545 U.S. 1127, 125 S. Ct. 2935 (2005). Under the plain error standard, McFarland must show that (1) there was error; (2) that the error was plain; and (3) that the plain error affected her substantial rights. Id. A defendant's substantial rights are affected when there is a reasonable probability that the district court would have imposed a different sentence if it had not believed the Guidelines to be mandatory. Id. at 1299. Finally, the court may notice such an error only if it seriously affected the fairness, integrity or public reputation of the judicial proceedings. Id. at 1298. Because we find no error, we proceed no further with this analysis.

12

sentencing factors listed in 18 U.S.C. § 3553(a), the court "may impose a more severe or more lenient sentence as long as [it] is reasonable." Id.

Our review for reasonableness is deferential. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). "We must evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)," and "we recognize that there is a range of reasonable sentences from which the district court may choose." Id. We have also noted that "ordinarily we would expect a sentence within the Guidelines range to be reasonable." Id. The Supreme Court has approved even the more formal adoption of a presumption of reasonableness for sentences imposed within the Guidelines range. Rita v. United States, ___ U.S. ___, 127 S. Ct. 2456, 2462-65 (2007). The Court explained that such a presumption is equal to an appeals court's recognition "that when the [sentencing] judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." Id. at ___, 127 S. Ct. at 2465 (citing Talley as an example). We have further held that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). A

13

district court's statement that it has considered the § 3553 (a) factors alone is sufficient. Id. at 1330.

At the sentencing hearing, the district court first correctly calculated the Guidelines sentence. McFarland does not challenge that calculation. The court then explicitly recognized a duty to consider the factors listed in 18 U.S.C. § 3553(a). The court also considered McFarland's argument as to why a sentence below the Guidelines range might be appropriate. In rejecting her arguments, the court explained that, due to specific factors listed in §3553(a), he believed a Guidelines sentence to be appropriate. We agree. Accordingly, we find the sentence to be reasonable.

### III. CONCLUSION

McFarland appeals her conviction and sentence on 170 counts of various types of fraud and money-laundering. Because we find that any evidentiary error was cured by the court's admonition and because we find the sentence imposed to have been both procedurally and substantively reasonable, we **AFFIRM** McFarland's conviction and sentence.