[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14548
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20230-UU-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RICK AUGUSTO MYRIE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 31, 2018)

Before MARTIN, JORDAN, and HULL, Circuit Judges.

PER CURIAM:

Rick Augusto Myrie appeals his sentence after being convicted of a number of drug trafficking crimes. He contends the district court erred by not granting him relief under the statutory "safety valve" provision.

I.

In March and April 2016, the FBI and Miami Police Department recorded a confidential informant making controlled purchases of drugs that were supplied by Myrie. In wiretapped phone calls, Myrie discussed supplying dealers with powder and crack cocaine. Law enforcement officers got a warrant to search Myrie's home. When officers went to execute the warrant, Myrie told them he had a firearm under his bed, but that there were no drugs in the home. In the home, officers found small baggies containing marijuana and crack cocaine, scales, razor blades, powdery residue, and empty baggies. Next to the bed on the floor in the master bedroom, officers saw a plate with crack cocaine and a razor blade on it. Protruding from under the bed was a nine-millimeter pistol inside a holster.

On April 18, 2017, Myrie was charged with one count of conspiring to possess with the intent to distribute cocaine, three counts of possessing with intent to distribute cocaine, and one count of possessing a firearm in furtherance of a drug trafficking crime. A jury acquitted Myrie on the firearm count, but convicted him of the other four counts.

2

Myrie's presentence investigation report ("PSR") calculated him to have a sentencing guideline range of 63- to 78-months imprisonment. Myrie objected to the PSR's application of a two-level enhancement for possession of a dangerous weapon because the jury had acquitted him of the firearm charge. Myrie also argued he was eligible for safety-valve relief under 18 U.S.C. § 3553(f), which allows a district court to sentence below a statutory mandatory minimum for certain nonviolent drug crimes.

At sentencing the government argued Myrie was ineligible for safety-valve relief because he possessed a firearm in connection with the crime and because he did not tell the government all he knew about the drug trafficking conspiracy. The district court declined to rule on whether Myrie had been fully truthful to the government without first holding a full hearing on that issue. As for the firearm issue, the district court described the legal standard as whether it was "clearly improbable that the gun did not have a connection to the drug trafficking." The district court then stated: "I cannot find that it's clearly improbable. I can find it's not probable, but I can't find it's not clearly improbable." Later in the hearing, the district court reiterated: "I cannot say that it was clearly improbable that the gun did not have a connection to the drug trafficking that was going on inside [Myrie's] house." Therefore the district court found the presence of the firearm precluded safety-valve relief.

The district court sentenced Myrie to 60-months imprisonment, the statutory mandatory minimum for his convictions. The court stated it would have given Myrie a lower sentence but for the mandatory minimum. Myrie appealed.

## II.

"When reviewing a district court's safety-valve decision, we review for clear error a district court's factual determinations and [review] de novo the court's legal interpretation of the statutes and sentencing guidelines." United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006) (per curiam) (alterations adopted and quotation omitted). This Court may affirm the district court on any ground supported by the record. United States v. Gill, 864 F.3d 1279, 1280 (11th Cir. 2017) (per curiam). However, an appellate court does not make factual findings. United States v. Barnette, 10 F.3d 1553, 1558 (11th Cir. 1994).

## III.

Myrie argues the district court applied the wrong legal standard for determining whether he was eligible for safety-valve relief.

Myrie acknowledges he did not make this objection at sentencing. Therefore we review only for plain error. United States v. Romines, 204 F.3d 1067, 1068 (11th Cir. 2000) (per curiam). There are four requirements for a reversal under plain error review. "[F]irst, an error occurred; second, the error was plain; third, it affected substantial rights; and finally, not correcting the error would

4

seriously affect the fairness of the judicial proceeding." <u>Farley v. Nationwide Mut. Ins. Co.</u>, 197 F.3d 1322, 1329 (11th Cir. 1999).

The district court plainly erred in its assessment of the safety valve issue.  To be eligible for safety-valve relief, a defendant must meet five conditions.  18 U.S.C. § 3553(f).  One of those conditions is "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  <u>Id.</u> § 3553(f)(2).  In discussing this firearm condition, the district court stated the legal standard was whether it was "clearly improbable that the gun did not have a connection to the drug trafficking."  The "clearly improbable" standard comes from the firearm enhancement provision in United States Sentencing Guidelines § 2D1.1.  Under that provision, a defendant receives a two-point increase in the offense level if a "weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  USSG § 2D1.1(b)(1); <u>id.</u> § 2D1.1 cmt. n.11(A); <u>see also</u> <u>United States v. Hall</u>, 46 F.3d 62, 63 (11th Cir. 1995) (per curiam) (discussing USSG § 2D1.1 enhancement).

However, the standard used for Guidelines § 2D1.1 is not the same as that for the safety valve.  <u>See</u> <u>United States v. Carillo-Ayala</u>, 713 F.3d 82, 90–91 (11th Cir. 2013) (explaining how the "safety valve works differently" from the firearm enhancement under § 2D1.1).  Guidelines § 2D1.1 operates under the "rebuttable

5

presumption that a firearm, if present . . . is connected with the offense," whereas a defendant is eligible for the safety valve if he can show it was "more than likely he did not" possess the firearm in connection with the offense. Id. at 90 (quotation omitted). As we have explained, "[w]here 'a firearm was possessed' by the defendant personally, and yet the defendant also seeks the protection of the safety valve, the district court must determine whether the facts of the case show that a 'connection' between the firearm and the offense, though possible, is not probable." Id. at 91. In making that determination, district courts look to the proximity of the gun to the drugs, as well as other factors such as "whether the firearm is loaded, or inside a locked container." Id. at 92.

The district court erred by failing to apply the correct standard. Further, where this circuit has established a clear legal standard, it is plain error for a district court not to apply that standard. See United States v. Ramirez-Flores, 743 F.3d 816, 822 (11th Cir. 2014).

The error affected Myrie's substantial rights. A legal error that results in an incorrect calculation under the sentencing guidelines is sufficient to "demonstrate[] a reasonable probability of a different outcome." Molina-Martinez v. United States, 578 U.S. ___, 136 S. Ct. 1338, 1346 (2016). Here, in the course of applying the wrong standard, the district court stated: "I can find it's not probable [that Myrie possessed the gun in connection with his drug offense], but I can't find

6

it's not clearly improbable." This suggests the district court might have ruled differently on the safety valve issue had it applied the correct standard, thus demonstrating a reasonable probability of a different outcome.

Finally, the error calls into question the fairness of the proceeding. The Supreme Court recently explained that "the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." Rosales-Mireles v. United States, 585 U.S. ___, 138 S. Ct. 1897, 1911 (2018); see also United States v. Shelton, 400 F.3d 1325, 1333–34 (11th Cir. 2005) (holding fourth prong of plain error standard was met in a mandatory guidelines case where the district court "indicated an express desire to impose a sentence lesser than the low end of the Guidelines range" and now had discretion to do so). The district court sentenced Myrie to the statutory minimum, and indicated it would have issued a lower sentence if Myrie had been eligible for the safety valve. Had the court applied the correct standard, Myrie may have received a shorter sentence.

The government concedes the district court used the wrong standard, but nonetheless argues the error was harmless because the facts support a finding that Myrie possessed the firearm in connection with the drug offense. The government also argues that regardless of the firearm issue, Myrie was ineligible for the safety valve because he was not fully truthful in his interviews with the government.

7

As to the first argument, we recognize that there is some record evidence that the firearm was "found in close proximity to drugs," but the district court did not make a fact finding in that regard.  See Carillo-Ayala, 713 F.3d at 92.  Further, a defendant seeking safety valve relief may demonstrate that despite such proximity, there was no connection between the firearm and his drug offense.  Id. The district court is better positioned than we are to decide that factual issue.  See Barnette, 10 F.3d at 1558.  We therefore leave it for the district court to do so in the first instance on remand, applying the correct legal standard outlined above.

As for the government's second argument, that Myrie was ineligible because he was not fully truthful with government investigators, the district court declined to decide that issue.  It explained that to make a determination it would need to "have a full-blown evidentiary hearing on the completeness and truthfulness of his statement," which would include testimony from government agents.  Without developing that factual record, the district court was unable to make a finding on this issue, and neither can we.  Appellate courts do not find facts, and without a developed factual record there is no basis for this Court to rule on this issue.  See id. (explaining that when faced with an incomplete factual record, "we must remand for further fact finding").

8

On remand, the district court should consider the applicability of the safety valve under the correct standard and, if it desires, hear evidence or testimony that will aid in making its decision.

**VACATED AND REMANDED.**